**OLD BRIDGE OWNERS COOPERATIVE CORP., a New Jersey Limited Partnership; North County Conservancy, Inc. a New Jersey Nonprofit Corporation; and Grandview Estates of New Jersey, L.P., a New Jersey Limited Partnership, Plaintiffs,**

v.

**TOWNSHIP OF OLD BRIDGE, and Old Bridge Municipal Utilities Authority, Defendants.**

Civil Action No. 95–2539.

United States District Court,
D. New Jersey.

Jan. 11, 1996.

Dembo & Saldutti by William F. Saldutti, III, Cherry Hill, New Jersey, for Plaintiffs Old Bridge Owners Cooperative Corp. and Grandview Estates of New Jersey, L.P.

Jamieson, Moore, Peskin & Spicer by Jay Samuels, Princeton, New Jersey, for Plaintiff North County Conservancy, Inc.

William Ruggierio, Legal Department, Township of Old Bridge, Old Bridge, New Jersey, for Defendant Township of Old Bridge.

Yacker & Granata by Louis E. Granata, Matawan, New Jersey, Miller & Chodzik by W. Lane Miller, East Brunswick, New Jersey, for Defendant Old Bridge Municipal Utilities Authority.

Orloff, Lowenbach, Stifelman & Siegel by Samuel Feldman, Roseland, New Jersey, for WNY Management Corp.

Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello by Steven Firkser, Newark, New Jersey, for Federal Deposit Insurance Corporation.

BISSELL, District Judge.

This matter comes before the Court on a motion to dismiss, a motion to intervene and a motion to amend the complaint. Plaintiffs Old Bridge Owners Cooperative Corp. ("Owners"), North County Conservancy, Inc. ("North County"), and Grandview Estates of New Jersey, L.P. ("Grandview") filed a complaint on May 25, 1995 against defendants Township of Old Bridge ("Township") and Old Bridge Municipal Utilities Authority ("Utilities"). The complaint seeks both declaratory and injunctive relief.

The property at issue is Sterling Estates, situated in Old Bridge, New Jersey. Sterling Estates is an apartment complex owned and operated by Grandview Estates of New Jersey, L.P. The property is burdened by a first mortgage held by the Federal Deposit Insurance Corporation ("FDIC") as receiver of the first mortgagee. The FDIC acquired its interest in November 1992. The property is also burdened by a second mortgage, currently held by plaintiff North County. (Compl., ¶ 15). North County acquired its interest from the Resolution Trust Corporation ("RTC") when the RTC was the receiver of the second mortgagee. (*Id.*, ¶ 22). The RTC acquired its interest in the property on February 1, 1991 and sold its interest to North County in November 1994. Accordingly, the property has been subject to a federal receivership since February 1, 1991.

The property taxes and water and sewerage charges that have accrued on the property from 1990 through 1995 remain unpaid. Defendants Township and Utilities contend that, because of such delinquencies, the property is burdened with superior tax, water and sewerage liens. It is these liens that plaintiffs seek to have declared void. In the event the liens are declared valid, plaintiffs seek a declaration that the mortgage interests of the FDIC and North County are superior to any tax, water or sewerage lien of the defendants. Furthermore, plaintiffs seek to enjoin the property from being assessed with property taxes or charged water and sewerage fees while the property is in a federal receivership.

On July 11, 1995, defendants filed a motion to dismiss under Fed.R.Civ.P. 12(c). Defendants claim that plaintiffs misconstrue 12 U.S.C. § 1825(b) and assert that, although they cannot foreclose on the property while it is held by a federal receiver and liens may not attach to that property during the receivership, liens exist for the outstanding tax, water and sewerage deficiencies and may attach once the federal receivership has concluded.

Also pending is plaintiff North County's motion to amend the complaint to add claims addressing the permissibility of recalculations and penalties under the federal statute at issue, in addition to claims involving closely related issues of state law. In addition, there exists a state court action filed by WNY Management Corporation ("WNY"), a former receiver of the property, and the FDIC. The defendants in that action are the same as those in the instant case. The state action similarly relates to the propriety of certain water and sewer charges and liens with respect to the property at hand. On October 25, 1995, WNY and the FDIC filed a motion to intervene as plaintiffs in the federal litigation so that they may assert their state claims in this proceeding. However, WNY no longer has an interest in the property and the FDIC is actively seeking to transfer its interest to North County.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## ANALYSIS

### I. Standard for a Motion to Dismiss

Currently before this Court is a motion to dismiss pursuant to Fed.R.Civ.P. 12(c), as the pleadings are closed. The standard applied to such a motion is the same as that for a motion to dismiss in lieu of an answer under Fed.R.Civ.P. 12(b)(6). Fed.R.Civ.P. 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In disposing of a motion to dismiss, the court operates on the assumption that the factual allegations in the complaint or counterclaim are true. *Neitzke,* 490 U.S. at 326–27, 109 S.Ct. at 1832–33. A motion to dismiss may be granted if the opposing party would not be entitled to relief under any set of facts consistent with the allegations in the complaint or counterclaim. As the Supreme Court stated in *Neitzke:*

> [n]othing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon, supra* [467 U.S. 69] at 73 [104 S.Ct. at 2229, 2232–33], a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one. What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations.

(*Id.* at 327, 109 S.Ct. at 1832).

### II. Defendants' Motion to Dismiss is Denied

■ It is undisputed that the real property taxes and water and sewer charges assessed against Sterling Estates for the years 1990 through 1995 remain unpaid. Defendants Township of Old Bridge and the Utilities Board claim to have tax, water and sewerage liens against the property for those debts. (Compl., ¶¶ 23, 24). However, because the property has been in a federal receivership since February 1991, plaintiffs assert that no liens could have arisen for debts accruing in that time period and that the liens the defendants claim to have are necessarily void as a matter of law. Plaintiffs do not distinguish between the pre-FDIC assessments and the post-FDIC assessments.

> Title 12 U.S.C. § 1825(b)(1) provides:
> When acting as a receiver, the following provisions shall apply with respect to the [FDIC] ... [t]he Corporation including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except

that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.

12 U.S.C. § 1825(b)(1). In simpler terms, the FDIC is exempt from almost all state and local taxation. However, an exception exists to sub-section 1825(b)(1). The FDIC remains liable for the *ad valorem* taxes assessed against any real property in which the FDIC has an interest. Such an interest arises when the property is part of a federal receivership. "Section 1825(b)(1) requires the payment of taxes on real property which the FDIC holds, so as not to deprive municipalities of the income they would have received had the property continued to be privately owned." *Simon v. Cebrick,* 53 F.3d 17, 21 (3d Cir.1995). Therefore, the real property taxes assessed against Sterling Estates, while the property was in federal receivership, accrue and are the statutory responsibility of the FDIC. (*Id.; Irving Indep. School Dist. v. Packard Properties,* 762 F.Supp. 699, 704 (N.D.Tex. 1991), *aff'd,* 970 F.2d 58 (5th Cir.1992).

■ In addition to real property taxes, delinquent water and sewerage charges are also at issue. An initial question arises as to the scope of permissible taxation under the exception to sub-section (b)(1) and whether the FDIC is liable for water and sewerage charges as it is for real property taxes. N.J.S.A. 40A:31–10 provides in relevant part:

After the commencement of operation of water supply facilities, the local unit or units may prescribe and, from time to time, alter rates or rentals to be charged to users of water supply services. *Rates or rentals being in the nature of use or service charges or annual rental charges,* shall be uniform and equitable for the same type and class of use or service of the facilities. Rates or rentals and types and classes of use and service may be based on any factors which the governing body or

bodies of that local unit or units shall deem proper and equitable within the region served.

N.J.S.A. 40A:31–10 (emphasis added). N.J.S.A. 40A:26A–10 addresses sewerage services and is phrased in identical language.

■ As the fees for water and sewer services are based upon individual *usage,* they do not fall within sub-section (b)(1). Sub-section (b)(1) speaks exclusively to *taxation.* Charges based upon usage take on the nature of a payment that arises under an implied contract for the sale of goods. *See Lamb v. City of Ventnor,* 161 N.J.Super. 140, 147, 390 A.2d 1230 (1978). Such a charge is not based upon the value of the property at issue nor is it a pecuniary burden laid upon the property for the purpose of supporting the government. Black's Law Dictionary at p. 1457 (Sixth Edition). Neither sub-section 1825(b)(1), nor any other federal statute, exempts the FDIC from its responsibility for water and sewerage charges on real property in which the FDIC has an interest. Accordingly, both real property taxes and water and sewerage charges continue to accrue on real property while the FDIC functions as receiver.

■ The conclusion that the FDIC is liable for the real property taxes and water and sewerage charges at issue does not end this Court's inquiry. The more complicated question is whether the property, while in federal receivership, may be encumbered by liens for these debts. N.J.S.A. 54:5–6 addresses delinquent real property taxes and provides:

Taxes on lands shall be a lien on the land on which they are assessed on and after the first day of January of the year for which the taxes are assessed, and all interest, penalties, and costs of collection which thereafter fall due or accrue shall be added to and become a part of such lien.

N.J.S.A. 54:5–6. N.J.S.A. 40A:31–12 speaks to water charges and provides in relevant part:

Rates, rentals, connection fees or other charges levied in accordance with N.J.S. 40A:31–10 and 40A:31–11, shall be a first lien or charge against the property benefit-

ed therefrom.... Liens levied in accordance with this section shall be enforceable in the manner provided for real property tax liens in chapter 5 of Title 54 of the Revised Statutes.

N.J.S.A. 40A:31–12. N.J.S.A. 40A:26A–12 contains the identical language, except it addresses delinquencies in sewerage charges. Accordingly, but for the federal receivership, liens would arise for delinquent property taxes and water and sewerage charges and attach to the property.

However, 12 U.S.C. § 1825(b)(2) provides:

No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, *nor shall any involuntary lien attach to the property of the Corporation.*

12 U.S.C. § 1825(b)(2) (emphasis added). It is clear that for any delinquency arising prior to the federal receivership, liens attach to and remain on the property. *Simon,* 53 F.3d at 21–22; *Irving Indep. School Dist. v. Packard Properties,* 970 F.2d 58, 61 (5th Cir. 1992); *Irving,* 762 F.Supp. at 704 (N.D.Tex. 1991). Although such liens run with the property, sub-section (b)(2) protects the FDIC's interest by precluding the foreclosure of the property to satisfy such a lien without the FDIC's consent. 12 U.S.C. § 1825(b)(2).

■ The more difficult question pertains to the second clause of sub-section (b)(2) and asks whether an identical lien arises and attaches to the property for a delinquency that results when the property is held by a federal receiver. Stated in greater detail, the question is whether a lien arises, but achieves only an inchoate status until the FDIC transfers its interest, when the lien would then become choate; or whether a lien fails to arise at all and the property is transferred free of the delinquency with the taxes and charges retaining the status of unpaid debts. If the former, the delinquency "runs with the land," if the latter, the creditor's only recourse is against the debtor (or the FDIC *in personam* ) and not against the property itself.

■ Sub-section 1825(b)(2) is clear and unambiguous. It states that no lien may attach for a tax delinquency that occurs while the property is held by a federal receiver. The argument that the lien remains inchoate until the property is no longer encumbered by a federal receiver is unavailing. "Tax liens are choate when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *In re Matter of Isley,* 104 B.R. 673, 676 (D.N.J.1989). All of the above requirements have been met prior to the transfer of the property from the hands of the FDIC.

■ However, "section 1825 does not excuse payment of tax by the FDIC, it simply denies authorities the ability to lien a FDIC property as a vehicle for collection of delinquent tax." *FDIC v. Lowery,* 12 F.3d 995, 997 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2674, 129 L.Ed.2d 809 (1994). Title 12 U.S.C. § 1825(b)(1) states that the FDIC is responsible for real property taxes that are assessed on property in which the FDIC has an interest. This Court has also determined that the FDIC is responsible for water and sewerage charges that accrue on the property. Although the FDIC is personally liable for this debt, sub-section 1825(b)(2) precludes the unpaid taxes that arise while the property is in federal receivership from acquiring lien status. Accordingly, as the lien does not attach, it does not run with the land. *Irving,* 762 F.Supp. at 704. Once the FDIC transfers its interest in the property, the municipality must seek payment from FDIC directly and not from the subsequent purchaser and once the interest is transferred, the subsequent purchaser assumes only the responsibility for later assessments. To hold otherwise would nullify the provision of sub-section (b)(1) that mandates the payment of real property taxes by the FDIC and would give that entity an incentive not to pay the required taxes at all.

■ Sub-section (b)(3) is instructive in that it explicitly exempts the FDIC from penalties and fines that would arise from the nonpayment of property taxes.

The Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of

any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due. 12 U.S.C. § 1825(b)(3). If the FDIC were not to remain personally liable for the delinquent taxes, the FDIC would have been exempt from the payment of essentially all taxation and sub-section (b)(3) would be unnecessary. Furthermore, sub-section (b)(2)'s provision that precludes any lien from attaching to property held by a federal receiver serves to preserve the property of the failed institution; it does not operate as a *de facto* exemption from the statutorily required payment of property taxes. Sub-section (b)(2) only operates to delay the payment of property taxes by the FDIC. However, in the instant case, taxes are due for periods both before and during the federal receivership. As previously noted, a lien arises for both taxes and water and sewerage charges on January 1 of the year in which the taxes are owed. N.J.S.A. 54:5-6, 40A:31-12 and 40A:26A-12. The property first fell to a federal receiver in February 1991. Accordingly, a lien has already attached to and remains on the property for the taxes and water and sewerage charges that arose in 1990 and 1991. However, for the taxes and water and sewerage charges owed from 1992 through 1995, no lien exists, although the FDIC remains personally liable for that delinquency.

The final issue before this Court is the question of the priority of the pre-existing liens for the taxes and charges from 1990 and 1991. Such a matter is governed by state law. *United States v. Brosnan,* 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960). N.J.S.A. 54:5-9 explicitly provides:

> Every municipal lien shall be a first lien on such land and paramount to all prior or subsequent alienations and descents of such lands or encumbrances thereon, except subsequent municipal liens.

N.J.S.A. 54:5-9. Language could not be more clear. Accordingly, defendants' liens for the years 1990 and 1991 are superior to plaintiffs' mortgage liens.

In summary, liens exist and have attached to the property for the taxes and water and sewerage charges assessed in 1990 and 1991.

However, the liens alleged to exist for assessments that accrued during the years 1992 through 1995 are void. As stated above, the FDIC remains personally liable for those amounts. In addition, the tax liens from 1990 and 1991 are superior to the mortgage interests. Furthermore, the property will continue to be assessed the appropriate property taxes and water and sewerage charges.

### III. Standard for a Motion to Amend the Complaint

Fed.R.Civ.P. 15(a) governs a motion to amend a complaint and provides, in pertinent part:

> [Beyond 20 days of service of the complaint], a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed.R.Civ.P. 15(a). Leave to amend is freely granted and the reasons for denying such a motion must be clear:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court. . . .

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord, U.S. v. Hougham,* 364 U.S. 310, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960); *Skehan v. Trustees of Bloomsburg State College,* 590 F.2d 470 (3d Cir.1978), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979); *Heyl & Patterson Intern. v. F.D. Rich Housing,* 663 F.2d 419 (3d Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). The discretion of the district court is limited by considerations of prejudice to the nonmoving party; undue prejudice is "the touchstone for the denial of leave to amend." *Cornell & Co. Inc. v. Occup. S. & H. Review*

*Com'n,* 573 F.2d 820 (3d Cir.1978), *accord, Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Zenith Radio Corporation v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–331, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Skehan,* 590 F.2d at 492; *Heyl,* 663 F.2d at 425. The liberal rules of amendment are premised on the express concern for the "just, speedy, and inexpensive determination of every action." *Boileau v. Bethlehem Steel Corp.,* 730 F.2d 929, 939 (3d Cir.1984), *cert. denied,* 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 150 (1984) (quoting Fed.R.Civ.P. 1). With respect to civil rights claims specifically, the Third Circuit has acknowledged that, "to accomplish the dual objectives of weeding out frivolous cases and keeping federal courts open to legitimate civil rights claims, courts should allow liberal amendment of civil rights complaints under Fed.R.Civ.P. 15(a)." *Rotolo v. Borough of Charleroi,* 532 F.2d 920, 923 (3d Cir.1976).

## IV. Plaintiffs' Motion to Amend the Complaint is Granted

The Second Count of the Proposed Amended Complaint seeks to challenge the assessments of the property's value made during the years 1991 through 1995. Only the value assessed in 1991 is relevant as this Court has determined that plaintiffs are not responsible for the later assessments. Plaintiffs assert that their right to a recalculation arises under 12 U.S.C. § 1825(b)(1). Whether a subsequent purchaser has the right to a reassessment under sub-section 1825(b)(1) is a matter of federal law. As this issue is necessarily entwined with the remainder of plaintiffs' complaint, plaintiffs' motion to amend to add the Second Count is granted to the extent of the assessment for 1991.

The Third Count of the Proposed Amended Complaint seeks a declaration that any assessed penalties are void under 12 U.S.C. § 1825(b)(3). Such a request is reasonably within the scope of the complaint and an issue similarly appropriate for amendment. The Fourth Count of the Proposed Amended Complaint claims that the Utilities Board has assessed vacant units water and sewerage charges in the same amount as occupied units. Plaintiffs seek to have these debts reassessed. As plaintiffs could ultimately be responsible for only the charges from 1991, the Fourth Count may be added only to that extent. Plaintiffs have no standing to seek reassessments of charges they could not possibly owe. The Fifth Count of the Proposed Amended Complaint addresses closely-related issues arising under the New Jersey Tax Sale Law which may come within this Court's supplemental jurisdiction. 28 U.S.C. § 1367. Accordingly, plaintiffs' motion to amend the complaint is granted with the above limitations. Within 20 days, plaintiffs shall file and serve an amended complaint asserting claims permissible under and consistent with this Opinion.

Also pending is a motion to intervene filed by WNY Management, a former receiver of the property, and the FDIC. WNY is no longer the receiver and the parties do not dispute that the FDIC has standing to intervene in this action. Accordingly, the motion of WNY to intervene is denied and that of the FDIC to intervene as a plaintiff is granted.

## CONCLUSION

Liens for the property taxes and water and sewerage charges assessed in the years 1990 and 1991 attached to the property prior to the federal receivership and run with the land. No liens have arisen for the similar charges from 1992 through 1995, the period the property was held by a federal receiver. However, the FDIC remains personally liable for those amounts. The property may continue to be assessed property taxes and water and sewerage charges, despite the federal receivership. Plaintiffs' motion to amend the complaint is granted to the extent the additional claims address only charges for which the plaintiffs may be held responsible. WNY's motion to intervene as a plaintiff is denied, that of the FDIC is granted.

## ORDER

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 11th day of January, 1996, **ORDERED** that:

1. Defendants' motion to dismiss plaintiffs' complaint be, and it hereby is, denied;

2. Plaintiffs' motion to amend the complaint be, and it hereby is, granted, to the extent the additional claims address only charges for which the plaintiffs may be held responsible. Said amended complaint shall be filed and served within 20 days of the date of this Order; and

3. The motion of third-party plaintiff WNY Management to intervene as a plaintiff be, and it hereby is denied; and the same motion of the FDIC is hereby granted.