728 A.2d 868 (1998)
321 N.J. Super. 297
CASINO REINVESTMENT DEVELOPMENT AUTHORITY, a public corporate body of the State of New Jersey, Plaintiff,
v.
Norman COHEN; Security Savings and Loan Association; Security Savings Bank, SLA; Bank of America National Trust & Savings Association (now appearing as Post Mortgage, Inc.); Resolution Trust Corporation as Conservator or Receiver for Security FSB; State of New Jersey; Marvin H. Sunshine, Esq.; Eva Ingram; Bank Leumi Trust Company of New York American Express Travel Related Services Company, Inc.; City of Atlantic City; M.D. Sass Municipal Finance Partners; First Fidelity Bank, N.A.; Atlantic City Municipal Utilities Authority; June Cohen; Matthew J. Scola, Esq.; and McDonald's Corporation, Defendants.
Superior Court of New Jersey, Law Division, Atlantic County.
Decided September 30, 1998.
Ernest Schoellkopf, Roseland, for plaintiff (Connell Foley & Geiser, attorneys).
Adam Greenberg, Voorhees, for defendant M.D. Sass Municipal Finance Partners (Honig & Greenberg, attorneys).
Beverly Graham-Foy, for defendant City of Atlantic City.
Howard Drucks, Atlantic City, for defendant Post Mortgage Corp. (Horn Goldberg Gorny Plackter Weiss & Perskie, attorneys).
James Lubin, for FDIC.
Harry Franks, for Lonnie Griffin (McGahn Friss Franks & Tripician, Northfield, attorneys).
*869 WILLIAMS, A.J.S.C.
This matter comes before the court on motions to withdraw funds on deposit with the Superior Court Trust Fund Unit in the underlying condemnation action. There are insufficient funds on deposit to satisfy all claims.
M.D. Sass Municipal Finance Partners (Sass) asserts a claim pursuant to N.J.S.A. 54:5-6, based on its purchase of a tax sale certificate and payment of subsequent taxes. Post Mortgage Corporation (Post) is the holder of two mortgages which were subject to receivership by the Resolution Trust Corporation (RTC). Post disputes the validity of the Sass claim asserting that, pursuant to 12 U.S.C.A. 1825(b)(2), no lien for unpaid real property taxes attached to the property. If the Sass claim is valid it will have a priority over the Post claim. A brief recitation of the undisputed facts is necessary.
In August 1979, Norman Cohen and his wife purchased the property which is the subject of the condemnation action. On December 17, 1986, the Cohens executed a first mortgage on the property in favor of Security Savings & Loan Association in the amount of $1,050,000.00. Thereafter, on July 6, 1992, they executed a second mortgage in favor of Security Savings & Loan Association in the amount of $750,000.00.
On December 4, 1992, Security Savings & Loan was placed into federal receivership under the RTC. The RTC, acting as conservator/receiver for Security Savings & Loan Association, assigned both mortgages to Bank of America in September 1993. On February 8, 1996, Bank of America assigned the mortgages to RTC Mortgage Trust (a private enterprise) and on June 26, 1996, RTC Mortgage Trust assigned the two mortgages to National Loan Investors. On June, 30, 1997, National Loan Investors assigned the mortgages to Post.
While all of this was occurring, taxes on the property were not kept current. On September 18, 1994, a tax sale was held and Sass purchased the tax sale certificate in the amount of $15,986.32. Thereafter, on December 30, 1994, Sass paid additional taxes due in the amount of $13,539.48.
The underlying condemnation action was initiated on August 15, 1995. A declaration of taking was filed on October 24, 1995, pursuant to which the Casino Reinvestment Development Authority (CRDA) deposited $515,000.00 with the Clerk of the Superior Court. The present Sass motion is one of a number of withdrawal motions which have been presented to the court.
The FDIC (as successor to the RTC) was not initially joined as a party to the condemnation action. However, because its interests could be affected by disposition of the Sass motion to withdraw funds, the court has permitted its joinder. For purposes of this decision the FDIC and RTC shall be treated as the same entity.
The resolution of the dispute herein requires interpretation of 12 U.S.C.A. 1825(b) and applicable New Jersey tax law.
During the period of the RTC receivership (December 4, 1992 to September 1993) the New Jersey Tax Sale Law at N.J.S.A. 54:5-6 provided as follows:
Taxes on land shall be a lien on the land on which they are assessed on and after the first day of January of the year for which the taxes are assessed and all interest, penalties, and costs of collection which thereafter fall due or accrue shall be added to and become a part of such lien.
The statute was amended effective May 12, 1994, to provide:
Taxes on lands shall be a continuous lien on the land on which they are assessed and all subsequent taxes, interest, penalties, and costs of collection which thereafter fall due or accrue shall be added to and be a part of such initial lien.
The amendment has not been retroactively applied. Alpha-Bella VI, Inc. by United Jersey Bank v. Clinton Twp., 14 N.J. Tax 597 (1995).
N.J.S.A. 54:5-9 deals with priority of liens and provides:
Every municipal lien shall be a first lien on such land and paramount to all prior or subsequent alienation and descents of such land or encumbrances thereon, except subsequent municipal liens.
*870 The provisions of federal law applicable to this dispute are found in the Federal Deposit Insurance Act as amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). The use of the term "Corporation" in the Act may refer to either the RTC or FDIC. 12 U.S.C.A. 1825(b) provides:
When acting as a receiver, the following provisions shall apply with respect to the Corporation:
(1) The Corporation including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by the State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that notwithstanding the failure of any person to challenge an assessment under the State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed. (2) No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.
The phrase "property of the Corporation" may refer to fee ownership of real estate by the FDIC or the holding of a lien interest. Simon v. Cebrick, 53 F.3d 17 (3d Cir.1995); Matagorda County v. Russell Law, 19 F.3d 215, 221 (5th Cir.1994). It is undisputed that the RTC's interest in the property herein was a security interest in the form of first and second mortgages. At no time did the RTC possess an ownership interest in the underlying fee. The issue in dispute is whether a lien under New Jersey Tax Law attached to the real property during the period that the RTC held the mortgages in receivership.
A facial reading of § 1825(b) would suggest that the decision is self-evident. Under New Jersey tax law a lien for unpaid real estate taxes attaches to the real estate itself. In this case the RTC never acquired an ownership interest in the real estate and therefore the title to the fee never became "property of the Corporation." The only "property of the Corporation" that the RTC acquired was a lien interest by reason of the two mortgages held by Security Savings & Loan Association. As a result, it would appear that § 1825(b)(2) does not act as a bar to attachment of a tax lien on the underlying real property during the period that the mortgages were held in receivership by the RTC.
This conclusion is consistent with well established FDIC policy. FDIC Legal Memorandum 91-48 (May 31, 1991) in addressing tax liens provides in pertinent part:
Although in most states, a real estate mortgage interest represents an interest in the real property, it is not tantamount to ownership of the property itself. Because the involuntary lien for delinquent real property taxes attaches to the property itself, nonconsensual liens purporting to attach to property owned in fee by a corporation are considered void, but liens may attach to property in which a corporation holds only a mortgage interest as security for a loan. See New Brunswick v. United States, 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693 (1928).
The FDIC's Statement of Policy Regarding the Payment of State and Local Taxes at 61 Fed.Reg. 65053 also provides:
D. Tax Liens

2. Attachment: Section 15(b)(2) of the FDIA provides that no involuntary lien shall attach to the property of the Corporation. One example of an involuntary lien is a lien that automatically attaches for delinquent taxes. Because the assets of a financial institution for which the FDIC has been appointed receiver do not become the "property of the Corporation" until the receivership appointment, any involuntary liens that attached prior to the appointment of the receiver are valid. Although in most states a real estate mortgage interest represents an interest in the real property, it is not tantamount to ownership *871 of the property itself. Because an involuntary lien for delinquent real property taxes attaches to the property itself, nonconsensual liens purporting to attach to the property owned in fee by the FDIC are considered void, but liens may attach to property in which the FDIC holds only a mortgage interest as security for a loan.
The FDIC has followed this policy in practice since its adoption. See Simon v. Cebrick, supra, where the plaintiff Simon purchased tax lien certificates for the years 1990, 1991, 1992 and 1993 on property which was subject to two prior mortgages held by the First National Bank of Toms River. In 1991, the bank's assets were taken into receivership by the FDIC, which became the holder of the mortgages. In framing the issue in dispute the court noted:
In the instant case, the FDIC does not contest the municipality's authority to assess taxes against real property in which it has an interest, nor does it contest the superiority of plaintiff's tax liens over its mortgages.
[Simon v. Cebrick, supra at 19.]
No matter how self-evident the conclusion may seem, however, Post Mortgage asserts that the FDIC interpretation is not a correct reading of § 1825(b)(2). Post bases its argument upon a decision of the United States District Court in Old Bridge Owners Co-op. v. Old Bridge Tp., 914 F.Supp. 1059 (D.N.J. 1996).
In Old Bridge the FDIC and RTC as receivers acquired first and second mortgages respectively on the same property. A subsequent purchaser of both liens sought a judgment that statutory liens for delinquent real property taxes were invalid by reason of § 1825(b)(2). In reading § 1825(b)(1) and (b)(2) together, the court concluded that no municipal lien for unpaid taxes attached to the property, because even though the FDIC held only a lien interest 12 U.S.C.A. 1825(b) required that the FDIC be "personally liable" for payment of all real estate taxes.
It is worth noting that the Old Bridge decision is not a final one. The case has not been concluded nor has there been the opportunity for appeal and review by the 3rd Circuit. As noted, Old Bridge is premised on a reading of section 1825 which would render the FDIC personally liable for payment of taxes on any property in which it has an interest, regardless of whether that interest is ownership of the fee or merely the holding of a lien. The court stated:
In simpler terms, the FDIC is exempt from almost all state and local taxation. However, an exception exists to sub-section 1825(b)(1). The FDIC remains liable for the ad valorem taxes assessed against any real property in which the FDIC has an interest. Such an interest arises when the property is part of a federal receivership. "Section 1825(b)(1) requires the payment of taxes on real property which the FDIC holds, so as not to deprive municipalities of the income they would have received had the property continued to be privately owned." Simon v. Cebrick, 53 F.3d. 17, 21 (3d Cir.1995). (emphasis added)
[Old Bridge Owners Co-op v. Old Bridge Tp, supra at 1064.]
Elaborating further the court said:
Title 12 U.S.C.A. 1825(b)(1) states that the FDIC is responsible for real property taxes that are assessed on property in which the FDIC has an interest. This court has also determined that the FDIC is responsible for water and sewerage charges that accrue on the property. Although the FDIC is personally liable for this debt, subsection 1825(b)(2) precludes the unpaid taxes that arise while the property is in federal receivership from acquiring lien status. Accordingly, as the lien does not attach, it does not run with the land. (emphasis added)
Id. at 1065.
The court thus concluded that a local tax lien would not attach to real property in which the FDIC had only a mortgage lien interest because the local taxing agency was protected by imposition of "personal liability" on the FDIC for payment of the tax.
12 U.S.C.A. 1825 was enacted to protect assets involuntarily acquired by the FDIC from losing value because of the FDIC's *872 lack of knowledge about local and State tax liens. Matagorda County v. Russell Law, supra at 221. The legal memorandum of the FDIC notes that at the end of 1990, the FDIC had a real estate portfolio of 41,509 properties with an aggregate book value of 19.4 billion dollars. These figures did not include the huge volume of real estate mortgage loans acquired in receiverships from failed financial institutions. Although concerned with protecting assets of the FDIC, Congress was also concerned with the impact of its actions on local governing bodies which relied on property taxes for their operation. The policy considerations underlying § 1825 were discussed by the court in Irving Indep. Sch. Dist. v. Packard Properties, 970 F.2d 58, 62-63 (5th Cir.1992) where the court stated:
The FDIC enjoyed sovereign immunity from state tax penalties to facilitate its reconsolidation of failed banks; in addition to the constitutional requirements, an admirable goal underlies that immunity. Whenever the FDIC can reduce the charges connected to property it has acquired, it can increase the value of the property, decrease its own losses, expedite resale, and save the nation's taxpayers and insured depositors a great deal of money. The ability to extinguish liens securing unpaid tax penalties incurred by earlier owners would certainly further these goals. But to endow the FDIC with such a valuable tool would come at a great cost to state and local taxing authorities. Using this case as an example, local governments and school districts have operated with reliance on the recovery of unpaid ad valorem taxes and penalties through liens on real property. To deny them their justified expectations of receiving those funds would threaten their ability to operate their schools. The policy arguments in this case are strong on both sides.
The Supremacy Clause of the United States Constitution, art. VI, cl. 2 prohibits any state or local governing body from taxing the property of the United States in the absence of Congressional consent. United States v. Allegheny County, Pa., 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1994). Because of its concern for the impact on local governing bodies, in enacting § 1825, Congress chose to limit the federal exemption from taxation, and subject real property of the FDIC to state and local real estate taxes.
However, § 1825(b) does not state that the FDIC is personally liable for the payment of taxes. The statute provides that when acting as a receiver:

The Corporation including its franchise, its capital, reserves and surplus, and its income shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed. (emphasis added)
The statute explicitly provides that while the Corporation shall be exempt from all state and local taxes, its real property is subject to taxes to the same extent as other real property is taxed. New Jersey treats unpaid taxes as a lien on real property and not as a personal liability of the owner. City of Newark v. Central Lafayette Realty Co., 150 N.J.Super. 18, 21, 374 A.2d 504 (App. Div.1977) cert. denied 75 N.J.528, 384 A.2d 508 (1977); Garden State Racing Ass'n v. Cherry Hill, 1 N.J. Tax 569, 574 (Tax Ct.1980). Thus, both the explicit terms of § 1825(b)(1) and New Jersey tax law indicate that the Corporation would not be personally liable for taxes. Interpreting § 1825 to impose "personal liability" for local real estate taxes does more than simply remove the constitutional exemption from local taxation for federal property. It actually places new remedies in the hands of state and local governments for the collection of real property taxes. In theory such a remedy could permit local governments to recover unpaid taxes in excess of the actual value of the propertya result which could not otherwise be achieved under New Jersey law. Such a result would not protect assets of the FDIC. To the contrary, it could diminish them. This court cannot conclude that Congress intended such a far reaching result in the absence of clear explicit language in the statute to that effect.
*873 Furthermore, while the Supremacy Clause exempts property of the United States from state and local taxation, there is no exemption from taxation for real property in which the United States holds only a lien interest. State and local governments have historically been able to tax such property, subject only to the requirement that enforcement to collect the taxes could not destroy the federal lien. City of New Brunswick v. United States, 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693 (1928); S.R.A. v. State of Minnesota, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851 (1946). As noted, the fundamental purposes of § 1825(b) were to protect the assets of the FDIC from losing value because of the FDIC's lack of knowledge about state and local taxation liens, while at the same time protecting local governments' needs to raise operating funds by taxation of real property. Given the fundamental purpose of the legislation and given the scope of the FDIC's responsibilities, it is difficult to believe, without clear explicit language, that the Congress intended to prohibit state and local governments from continuing to tax real estate in which the United States held only a lien interest and concomitantly place responsibility for real property taxes on the FDIC where it had no such responsibility before. Such a requirement would do little to preserve assets, substantially add to the already overwhelming responsibilities of the agency, and shift responsibility for local taxes from the property itself to the Federal Government.
This court is sensitive to the fact that it has been called upon to construe a federal statute in an area already addressed by the United States District Court. Great deference and respect should be accorded decisions of the United States Courts, particularly when interpretation of federal law is in issue. Ultimately, however, the obligation of any court is to use its best judgment in an attempt to interpret the law in a manner that is faithful to the intent of its drafters. In so doing, this court respectfully reaches a different conclusion from the trial court in Old Bridge.
In this case, the RTC never held title to the property in question. Its only interest in the real estate was a security interest in the form of two mortgage liens. Therefore only the mortgage liens and not the underlying real estate became "property of the Corporation." Under New Jersey law a lien for unpaid real estate taxes attaches only to real property. Since the real property herein never became "property of the Corporation", the provisions of 12 U.S.C.A. 1825(b)(2) do not bar the lien of Sass. That lien by operation of N.J.S.A. 54:5-9 therefore has priority over the interest of Post Mortgage. Accordingly, the motion of Sass to withdraw funds is hereby granted.
Counsel for Sass shall submit an appropriate order for withdrawal. The order shall determine the amount due on the tax lien as of October 24, 1995, the date of filing of the declaration of taking and the deposit of monies in this matter. Interest on the amount due from that date shall be determined by the Superior Court Trust Fund Unit in the same manner as with all other deposits held by it.