769 A.2d 413 (2001)
338 N.J. Super. 350
S & R ASSOCIATES, Plaintiff-Appellant,
v.
LYNN REALTY CORPORATION; Meadowlands National Bank n/k/a Hudson United Bank; Patisserie Dumas N.J., Inc., a New Jersey Corporation; Fred Werner Retirement Plan, Allan R. Zaroff Retirement Plan, Werner, Zaroff, Slotnick, Stern & Ashkenazy Profit Sharing Plan and Charles L. Schocket, M.D., P.C., Employees Pension Trust; Leonard Listfield; Martha Rydelek, Individually and as the Executrix of the Estate of Luis Perez Vega and John Doe, husband of Martha Rydelek, said name John Doe being fictitious; Capital National Bank, a National Banking Association created and existing under the Laws of the United States of America; Forensic Psychiatric Hospital; Art Sterling Silver Co., Inc.; Mario Hernandez; Chase Cash Reserve; and State of New Jersey, Defendants.
S & R Associates, Plaintiff-Appellant,
v.
Enrique Castro and Mrs. Enrique Castro, Wife of Enrique Castro; Ivo Perez and Mrs. Ivo Perez, Wife of Ivo Perez; Cresencio Montesinos; and United States of America, Defendants,
Alma Group, L.L.C., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted November 27, 2000.
Decided March 23, 2001.
*414 Allocca & Pellegrino, Parsippany, attorneys for appellant (Michael G. Pellegrino and Ralph P. Allocca, on the brief).
Weiler & Brandman, Cranford, attorneys for respondent (Laura V. Studwell, of counsel and on the brief).
Before Judges HAVEY, CUFF and LEFELT.
The opinion of the court was delivered by *415 CUFF, J.A.D.
This appeal presents an issue of first impression for the appellate courts of this State, namely whether tax liens arise and tax sale certificates are valid when the underlying taxes were unpaid during the time the mortgage on the premises was in default and the Federal Deposit Insurance Corporation (FDIC) held the mortgage. The motion judge held that the tax liens were invalid. We also address whether the motion judge reasonably imposed counsel fees on the holder of the contested tax sale certificate when it refused to consent to reopen the judgment of foreclosure on the tax sale certificate. We reverse both orders.
On August 29, 1989, defendant Capital National Bank (Capital) recorded a collateral mortgage to secure a $175,000 debt for premises described as Block 41, Lot 2 in West New York owned by defendants Enrique Castro and his wife and Ivo Perez and his wife. On July 6, 1990, the FDIC declared Capital insolvent. The FDIC was appointed the receiver and assumed ownership of all of Capital's assets.
Property taxes were assessed for the property for 1989, 1990, and 1991. The taxes were not paid and on June 15, 1992, the Tax Collector of the Town of West New York sold the property to the Town of West New York for $13,572.04, which represents the sum of the delinquent taxes, water and sewer charges. The sale was subject to redemption with interest at the rate of 18% per year for a total of $16,850.47. A tax sale certificate was recorded on April 23, 1993. This certificate was assigned to plaintiff S & R Associates on September 26, 1994.
More than two years later, on July 24, 1997, plaintiff filed a complaint to foreclose the tax sale certificate. Defendant Capital was named as one of the subordinate lienholders. The FDIC was not named as a defendant or served with the complaint. It is undisputed that the FDIC never gave its consent to the foreclosure. It is also undisputed that the FDIC never held title to the property. A final judgment of foreclosure was entered in plaintiff's favor on October 21, 1998. On March 12, 1999, the Capital note and mortgage was sold by the FDIC to defendant Alma Group, L.L.C. (Alma).
In May 1999, Alma discovered the final judgment of foreclosure in the course of a title search in preparation of foreclosure proceedings on its recently acquired mortgage. Alma requested plaintiff to consent to vacate its judgment of foreclosure. When plaintiff refused, Alma filed a motion to vacate the judgment. Plaintiff resisted the relief arguing that it had no actual notice of the FDIC's mortgage interest, constructive notice through publication in the Federal Register was not effective, and Alma did not have a meritorious defense to the foreclosure proceeding. Alternatively, plaintiff argued that any order vacating the foreclosure judgment should be limited solely to the Block 41, Lot 2 parcel.
The motion judge found that the foreclosure proceeding was flawed as to Alma's mortgage interest because the FDIC never received the complaint. He held that Alma, as the assignee of the FDIC, was entitled to either raise a defense to the foreclosure or to redeem the tax sale certificate in the amount required. The foreclosure judgment was vacated as to this parcel and plaintiff was instructed to move to foreclose Alma's mortgage interest. The motion judge reserved on Alma's request for counsel fees.
Plaintiff reinstituted foreclosure proceedings naming Alma as a subordinate lienholder. Alma denied that its interest was subordinate to plaintiff's interest arguing *416 that the tax sale certificate was null and void and that the tax lien was invalid from July 1990 to March 1999, the period the FDIC held the mortgage. Relying on Old Bridge Owners Co-op. Corp. v. Township of Old Bridge, 914 F.Supp. 1059 (D.N.J.1996), the motion judge adopted Alma's position and invalidated plaintiff's tax sale certificate and the tax lien.
Our analysis begins with an examination of 12 U.S.C.A. § 1825. The statute provides in relevant part:
(a) General rule
All notes, debentures, bonds, or other such obligations issued by the Corporation shall be exempt, both as to principal and interest, from all taxation (except estate and inheritance taxes) now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority.... The Corporation, including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed.

(b) Other exemptions
When acting as a receiver, the following provisions shall apply with respect to the Corporation:
(1) The Corporation including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.
(2) No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.

(3) The Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.
This subsection shall not apply with respect to any tax imposed (or other amount arising) under Title 26. (emphasis added.)
This statute implicates two legal issues. The first is whether a mortgage interest constitutes "property" within the intendment of subsection (b)(2). The second issue is whether the statute prevents the holder of a tax lien from enforcing the lien once the FDIC no longer has any interest in the underlying property.
There are three opinions from New Jersey trial courts dealing with these issues. One opinion supports Alma's position and the motion judge's disposition, two favor plaintiff's position. Old Bridge, supra, 914 F.Supp. 1059; In re Stafford Pool & Fitness Ctr., 252 B.R. 627 (Bankr. D.N.J.2000); Casino Reinv. Dev. Auth. v. Cohen, 321 N.J.Super. 297, 728 A.2d 868 *417 (Law Div.1998).[1] None of the opinions are binding on this court. Old Bridge and Stafford Pool are federal trial court opinions. Although federal court decisions interpreting a federal statute are not binding upon our state courts, they are entitled to respect as a matter of comity and in the interest of uniformity. Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 79-80, 577 A.2d 1239 (1990); Blecker v. State, 323 N.J.Super. 434, 442, 733 A.2d 540 (App. Div.1999).
In Old Bridge, the FDIC and RTC held mortgages on real property as receivers of the first and second mortgagees. Old Bridge, supra, 914 F.Supp. at 1062. Tax liens arose against the property for unpaid taxes during the years the property was in receivership. Id. at 1063. The plaintiffs, who acquired their interests in the property from the federal receivers, relied on 12 U.S.C.A. § 1825 to argue that the tax liens were void as a matter of law. Ibid.
The federal court first noted that, under the statute, the FDIC remained liable for property taxes assessed against any real property in which it had an interest. That is, real property taxes assessed against the property owner while a property was in federal receivership accrued and were the statutory responsibility of the FDIC. Id. at 1064.
The federal court turned next to the more difficult question of whether the property, while in federal receivership, may be encumbered by liens for these debts. The federal court looked to New Jersey tax law, specifically N.J.S.A. 54:5-6, which provides that taxes on lands "shall be a lien on the land on which they are assessed." Ibid. Since 12 U.S.C.A. § 1825(b)(2) provided that no involuntary lien shall attach to the FDIC's property, any delinquency arising prior to the federal receivership, liens would attach and run with the land. Id. at 1065. However, the judge reasoned that subsection (b)(2) protected the federal interest by precluding the foreclosure of the property to satisfy such a lien without the FDIC's consent. Ibid.
With respect to delinquent taxes that arose when the property was held by a federal receiver, the Old Bridge court framed the question as follows:
Stated in greater detail, the question is whether a lien arises, but achieves only an inchoate status until the FDIC transfers its interest, when the lien would then become choate; or whether a lien fails to arise at all and the property is transferred free of the delinquency with the taxes and charges retaining the status of unpaid debts. If the former, the delinquency "runs with the land," if the latter, the creditor's only recourse is against the debtor (or the FDIC in personam) and not against the property itself.

[Ibid.]
The federal court answered the question by concluding that the statute clearly and unambiguously provided that no lien may attach for a delinquency that occurs while the property is held by a federal receiver. The court rejected the argument that the lien merely remained inchoate until the property was no longer encumbered by the receivership. Ibid. However, this did not mean that the payment of the tax by the FDIC was excused; rather, "`it simply denies authorities the ability to lien a *418 FDIC property as a vehicle for collection of delinquent tax.'" Ibid. (quoting Federal Deposit Ins. Corp. v. Lowery, 12 F.3d 995, 997 (10th Cir.1993), cert. denied, 512 U.S. 1205, 114 S.Ct. 2674, 129 L.Ed.2d 809 (1994)). The district court held that the FDIC remained personally liable for the debt even though a lien did not attach. Thus, once the FDIC transferred its interest in the property, the taxing authority had to seek payment from the FDIC directly and not from the subsequent purchaser. Ibid. According to the district court, subsection (b)(2) merely operated to delay payment of property taxes by the FDIC. Id. at 1066.
A state trial judge has disagreed with this interpretation. In Casino Reinv. Dev. Auth., supra, 321 N.J.Super. at 302, 728 A.2d 868, Judge Williams first noted that the phrase "property of the Corporation" may refer to either fee ownership of real estate by the FDIC or the holding of a lien interest. Turning to the question whether a lien under New Jersey tax law could attach to real property during the period a federal receiver held a mortgage, Judge Williams concluded that a "facial reading" of the federal statute "would suggest that the decision is self-evident." Ibid. Under New Jersey tax law, a lien for unpaid taxes attaches to the real estate itself. He reasoned that where the federal receiver never acquires an ownership interest in the real estate and the title to the fee never becomes "property of the Corporation," § 1825(b)(2) does not act as a bar to attachment of a tax lien on the underlying real property during the period that a mortgage is held in federal receivership. Ibid.
Judge Williams believed that this conclusion was consistent with well established FDIC policy, which stated unequivocally that liens may attach to property in which the FDIC holds only a mortgage interest as security for a loan. See Statement of Policy Regarding the Payment of State and Local Property Taxes, 61 Fed. Reg. 65053, 65056.
Judge Williams specifically rejected the Old Bridge conclusion that the FDIC remained personally liable for payment of the tax, 321 N.J.Super. at 304, 728 A.2d 868, primarily because New Jersey treats unpaid taxes as a lien on real property and not as a personal liability of the owner. Id. at 306, 728 A.2d 868; see City of Newark v. Central and Lafayette Realty Co., 150 N.J.Super. 18, 21, 374 A.2d 504 (App. Div.), certif. denied, 75 N.J. 528, 384 A.2d 508 (1977). Interpreting the federal statute to impose personal liability for local real estate taxes would place new remedies in the hands of local governments for the collection of such taxes. Such a result would be contrary to the intent of the federal statute because it could result in the diminution of the FDIC's assets, a result that Congress could not have intended. Casino Reinv. Dev. Auth., supra, 321 N.J.Super. at 306, 728 A.2d 868. Judge Williams noted that the federal statute was enacted to protect assets involuntarily acquired by the FDIC from losing value because of the FDIC's lack of knowledge about local tax liens. 321 N.J.Super. at 304-05, 728 A.2d 868 (citing Matagorda County v. Law, 19 F.3d 215, 221 (5th Cir.1994)).
Recently, a third trial judge has considered this issue. In Stafford Pool, supra, Bankruptcy Judge Stripp, held that a tax lien may attach to real property during the period in which the FDIC holds the property. 252 B.R. at 630. In his opinion, he criticized the holding of Old Bridge. He observed that the holding in Old Bridge was contrary to the long-standing position of the FDIC on this issue. Id. at 631. In addition, he held that the issue is not whether a mortgage is property but *419 whether the FDIC mortgage is the property to which the tax lien attaches within the meaning of 12 U.S.C.A. § 1825(b)(2). Ibid. Judge Stripp noted that according to New Jersey law, tax liens attach to the real property, the same real property to which the FDIC mortgage attaches. Ibid. Finally, he offered the following criticism of Old Bridge:
The court in Old Bridge believed that if no liens for taxes could attach to property on which the FDIC holds a mortgage, the taxes would nevertheless be paid because "the FDIC remains personally liable for those amounts." [Old Bridge, 914 F.Supp. at 1068.] As previously noted, however, "New Jersey treats unpaid taxes as a lien on real property and not as a personal liability of the owners." [Casino Reinv. Dev. Auth., supra, 321 N.J.Super. at 306, 728 A.2d 868 (citing City of Newark, supra, 150 N.J.Super. at 21, 374 A.2d 504; Garden State Racing Ass'n v. Cherry Hill, 1 N.J. Tax 569, 574 (1980)) ]. Thus, if the tax liens in question do not attach to the real property, there is no way for the tax liability to be enforced. It seems highly unlikely that it was the intention of Congress in enacting section 1825(b)(2) of FIRREA to cause such a result. As previously noted, the FDIC does not believe that Congress had any such intention.
[Stafford Pool, supra, 252 B.R. at 631.]
We conclude that the view that involuntary liens, such as tax liens, may attach to real property in which the FDIC holds only a mortgage interest as security for a loan is consistent with the legislative purpose of the federal statute, the FDIC interpretation of the statute, and New Jersey tax law. However, state and local taxing authorities may not foreclose against property in which the FDIC holds a mortgage interest without protecting that interest. Stated differently, a tax lien may not be foreclosed without FDIC consent during the term of its receivership. Furthermore, when the mortgage is sold by the FDIC to a third party, the mortgage is sold burdened by the tax lien which has attached to the realty.
N.J.S.A. 54:5-6 provides that "[t]axes on lands shall be a continuous lien on the land on which they are assessed...." Real estate taxes are not a personal obligation of the owner of the realty. A lien arises against the real estate on which the taxes are assessed in the event of non-payment. City of Newark, supra, 150 N.J.Super. at 21, 374 A.2d 504. As such, the lien attaches to the realty not to the mortgage which serves as security for a loan. Plainly this rule provides no support for the Old Bridge rule that the taxing authority should seek payment directly from the FDIC.
The FDIC's Statement of Policy Regarding the Payment of State and Local Property Taxes provides as follows:
D. Tax Liens

[* * *]
2. Attachment: Section 15(b)(2) of the FDIA provides that no involuntary lien shall attach to the property of the Corporation. One example of an involuntary lien is a lien that automatically attaches for delinquent taxes. Because the assets of a financial institution for which the FDIC has been appointed receiver do not become the "property of the Corporation" until the receivership appointment, any involuntary liens that attached prior to the appointment of the receiver are valid. Although in most states a real estate mortgage interest represents an interest in the real property, it is not tantamount to ownership of the property itself. Because an involuntary lien for delinquent real property *420 taxes attaches to the property itself, nonconsensual liens purporting to attach to the property owned in fee by the FDIC are considered void, but liens may attach to property in which the FDIC holds only a mortgage interest as security for a loan. (emphasis added).
[Statement of Policy Regarding the Payment of State and Local Property Taxes, supra, 61 Fed.Reg. 65053, 65056 quoted at Casino Reinv. Dev. Auth., supra, 321 N.J.Super. at 303, 728 A.2d 868[2].]
The Statement of Policy Regarding the Payment of State and Local Property Taxes further states that, "notwithstanding the waiver of immunity for ad valorem real property taxation, state and local taxing authorities may not sell or foreclose against property in which the FDIC holds an interest without fully protecting that interest." 61 Fed.Reg. 65053, 65055. This prohibition "recognizes the considerable burden faced by the FDIC in administering the assets involuntarily acquired by it, and that substantial value would be lost to the Corporation ... if real estate tax liens could be enforced through traditional sale or foreclosure remedies." Ibid.
Moreover, in both the original and the revised Statements of Policy, the FDIC has taken the position that a mortgage interest held by the FDIC is "property" within the meaning of subsection (b)(2) and that a tax lien could not be foreclosed so as to extinguish the FDIC's mortgage lien without its consent. Id. at 65056. Federal courts have similarly construed the statute. See, e.g., Federal Deposit Ins. Corp. v. Lee, 130 F.3d 1139, 1143 (5th Cir.1997); Simon v. Cebrick, 53 F.3d 17, 21 (3d Cir. 1995); Matagorda County, supra, 19 F.3d at 221; S/N-1 REO Ltd. Liab. Co. v. City of Fall River, 81 F.Supp.2d 142, 149-50 (D.Mass.1999); Cambridge Capital Corp. v. Halcon Enterps., Inc., 842 F.Supp. 499, 503-04 (S.D.Fla.1993).
These cases, in turn, have relied on the holding of the United States Supreme Court in City of New Brunswick v. United States, 276 U.S. 547, 555-56, 48 S.Ct. 371, 372-73, 72 L.Ed. 693, 698 (1928), that a municipality may assess and enforce collection of taxes assessed against a property owner even where a federal entity holds only a mortgage interest in the property, as long as the local authority does not destroy the preexisting federal lien. There is no basis for treating mortgage instruments held by federal entities differently from other federal property. Rust v. Johnson, 597 F.2d 174, 177 (9th Cir.), cert. denied, 444 U.S. 964, 100 S.Ct. 450, 62 L.Ed.2d 376 (1979).
Furthermore, the FDIC policy statement concedes "a valid lien for ad valorem real property taxes and interest will be recognized as being entitled to priority over the FDIC's mortgage interest." 61 Fed.Reg. at 65056. The effect of the prohibition against foreclosure or sale by the taxing authority "is that the FDIC, by granting or withholding consent to foreclosure, can control the time and manner in which property is sold." Ibid.
Moreover, if a sale of the tax lien takes place before the FDIC obtains any fee interest in the property, or where the tax lien has priority over the FDIC's lien, the FDIC will pay the entire amount due to the purchaser of the lien, including interest. "The charges are considered to be merged together in the hands of the purchaser to whom the amount paid is simply *421 the purchase price for the release of the lien or property, subject to redemption." Ibid. To sum up the FDIC's position, then:
General Principles: If any ad valorem real property taxes (including interest) on Corporation owned property are secured by a valid lien (in effect before the property became owned by the Corporation), the Corporation will pay those claims. With respect to property not owned by the Corporation, but in which the Corporation has a lien interest, any ad valorem real property taxes (including interest) will be paid so long as they are secured by a valid lien with priority over the Corporation's lien interest....
Foreclosure: No property of the Corporation is subject to levy, attachment, garnishment, foreclosure, or sale without the Corporation's consent. Furthermore, a lien for taxes and interest may attach to property in which the Corporation has a lien or security interest, but the Corporation will not permit a lien or security interest held by it to be eliminated by foreclosure without the Corporation's consent.
Sale of Tax Liens: In cases in which a tax lien has been sold to a private party under state law, if (1) the sale takes place before the Corporation obtains a fee interest in the property, or if the Corporation has a lien interest in the property and the tax lien has priority over the Corporation's lien, and (2) the Corporation desires to eliminate the tax lien purchaser's interest, the Corporation will pay the amount required by state law to satisfy such interest (other than any fees or penalties specifically imposed to redeem such interest). If the tax lien does not have priority, the Corporation will take whatever action is necessary to ensure that its own interest is satisfied first. If the Corporation has a fee interest, the sale must protect the Corporation's interest.

[61 Fed.Reg. at 65057-65058.]
Applying these principles, the judgment in favor of Alma must be reversed. To be sure, the initial order setting aside the foreclosure as to Alma was appropriate. The FDIC was never joined in plaintiff's original foreclosure action. Having no notice of the action and having not given its consent, the foreclosure judgment had no effect on the FDIC mortgage interest. By the same token, its mortgage lien was never extinguished, devalued or disturbed in any manner. Its ability to enforce its rights under its mortgage lien was not prejudiced. First State Bank-Keene v. Metroplex Petroleum, Inc., 155 F.3d 732, 739 (5th Cir.); S/N-1 REO Ltd. Liab. Co., supra, 81 F.Supp.2d at 150. Thus, when the FDIC transferred the note and mortgage to Alma, its mortgage interest remained in effect. Contrary to Alma's position, the FDIC interest was not extinguished upon recordation of the tax sale certificate. On the other hand, any party which acquired the FDIC mortgage interest after a tax sale would take its mortgage interest subject to the tax liens because § 1825(b)(2) and the FDIC policy statement recognize that local tax liens will have priority over the federal mortgage lien if the local tax lien is entitled to priority in accordance with state law over a non-federal mortgage holder.
By operation of federal and state law, Alma should have been on notice of at least the possibility of local tax liens and the recordation of a tax sale certificate when it purchased its mortgage interest from the FDIC. Admittedly, this would result in a devaluation of the mortgage interest Alma obtained; however, federal law and long-standing agency practice acknowledge and allow this circumstance. Furthermore, the limited federal exemption from taxation bestowed by Congress *422 in § 1825 reflects its acknowledgment of the compelling policy interest not to undermine the reliance of local governing bodies on property taxes for their operation.
Thus, we conclude that the motion judge properly vacated the judgment of foreclosure concerning this parcel and properly instructed plaintiff to recommence its action to foreclose Alma's mortgage interest in the parcel. We disagree, however, with his holding that the tax lien for the period while the FDIC held the note and mortgage was invalid. Having decided this aspect of the appeal, we must also address the imposition of attorneys' fees on plaintiff.
Following his decision on the merits, the motion judge awarded attorneys' fees to Alma based on plaintiff's unreasonable opposition to Alma's motion to vacate the original judgment. Alma moved to vacate the judgment based on plaintiff's failure to name FDIC as a subordinate lienholder or serve the complaint on it. Once Alma provided proof to plaintiff that FDIC had not been served, it asked plaintiff to withdraw its opposition to the motion. Plaintiff was placed on notice that Alma would seek attorneys' fees if it had to proceed with a motion to vacate.
Plaintiff opposed Alma's request on several grounds, including an expression of its opinion that the tax lien and tax sale certificate were valid. The motion judge found that the procedural requirements of R. 1:4-8 (frivolous litigation) had been satisfied, that Alma's request was limited in scope and reasonable, and plaintiff never consented to this limited demand. He awarded $6,883.16 in fees.
Although we have held that the motion judge properly vacated the judgment of foreclosure and required plaintiff to foreclose the interest held by Alma, we have also held that plaintiff correctly disputed Alma's position regarding the validity of the tax lien and the tax sale certificate. Sanctions are not warranted where the plaintiff has a reasonable good faith belief in the merit of its position. DeBrango v. Summit Bancorp, 328 N.J.Super. 219, 226, 745 A.2d 561 (App.Div.2000); J.W. v. L.R., 325 N.J.Super. 543, 548, 740 A.2d 146 (App.Div.1999). The sanction is reversed.
Reversed.
NOTES
[1] Other state and federal courts have considered similar issues and have, like the New Jersey cases, reached disparate results. One commentator has opined that the state law governing tax liens of each jurisdiction may dictate the result. Christopher John Stracco and Paul J. Halasz, FIRREA and Local Property Tax Liens: A Collision of Competing Government Interests, 14 Prob. & Prop. 8, 12 (May/ June 2000).
[2] Judge Williams relied on the Statement of Policy issued on June 4, 1991. That Statement was revised and reissued by a Statement of Policy effective January 9, 1997, also found at 61 Fed.Reg. 65053. Any differences between the two Statements are not pertinent to this appeal.