STATE of Texas, County of Bexar, and City of San Antonio, Appellants,

v.

W.W. BANKERD & Federal Deposit Insurance Corporation, as Receiver for NBC Bank—San Antonio, N.A., Appellees.

No. 04–91–00653–CV.

Court of Appeals of Texas, San Antonio.

July 22, 1992.

Rehearing Denied Sept. 21, 1992.

Richard A. Strieber, Oliver S. Heard, Jr., Karl E. Hays, Heard, Goggan, Blair & Williams, San Antonio, Tex., for appellants.

Mark Stanton Smith, Law Offices of John R. Heard, Darryl W. Brown, F.D.I.C., San Antonio, Tex., Lawrence H. Richmond, Ann S. Duross, Colleen B. Bombardier, David N. Wall, Larry D. Goodwyn, F.D.I.C., Washington, D.C., for appellees.

Before BUTTS, PEEPLES and CARR, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a trial court judgment ordering that the foreclosure of a parcel of land for the payment of real property taxes be subject to a lien held by the Federal Deposit Insurance Corporation (FDIC). We affirm.

1. The trial court granted judgment for personal liability against appellee Bankerd.

The appellant taxing authorities filed suit against W.W. Bankerd[1], the property's owner, and NBC bank which held a deed of trust lien on the property to recover delinquent taxes[2]. When the bank became insolvent, the FDIC became a party as the bank's receiver. The FDIC answered the suit asserting that the liens of the taxing entity were not superior to the FDIC's interest in the property because 12 U.S.C.A. § 1825(b)(2) (1989) prohibits involuntary liens against the property of the FDIC.

The trial court found that the FDIC's lien interest was "property" and that 12 U.S.C.A. § 1825(b)(2) prohibits the foreclosure of the "property," the deed of trust lien, without the FDIC's consent. The trial court ordered that the property be sold, with the proceeds applied to the payment of the tax liens, and that the purchaser at the tax sale take the property subject to the FDIC's lien.

The taxing entities bring four points of error on appeal: the trial court erred in holding that "property of the Corporation" as that phrase is used in 12 U.S.C. 1825(b)(2) includes the mortgage interest of NBC Bank created by deeds of trust held by the FDIC in its capacity as receiver for the bank; the trial court erred in holding that 12 U.S.C. 1825(b)(2) prohibits the appellants from foreclosing statutory tax liens and selling the property free and clear of all subordinate liens; the trial court erred in holding that the appellants must foreclose their tax liens subject to the deed of trust liens; and 12 U.S.C. 1825(b)(2) is unconstitutional because it deprives the taxing authorities of property without due process of law or just compensation.

## I.

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) provides in 12 U.S.C.A. § 1825(b) that

When acting as a receiver, the following provisions shall apply with respect to the [FDIC]:

2. *See* Tex.Tax Code Ann. § 32.01 (Vernon Supp. 1992).

. . . .

(2) No property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], nor shall any involuntary lien attach to the property of the [FDIC].

The taxing entities argue that in determining whether the FDIC lien constituted property under 12 U.S.C. § 1825(b)(2), two separate questions must be answered: "whether the mortgage interests are truly property" and whether they are property of the FDIC. The appellants urge that the FDIC's lien interest is not property because under Texas law a mortgage lien interest is not recognized as property, and therefore it cannot become property when the FDIC acquired it from the failed institution.

■ In section 1825 Congress speaks of "attachment" and "garnishment", terms usually referring to the seizing of personal property, especially money, for the satisfaction of a debt. However, under federal law property includes a mortgage interest. *Rust v. Johnson,* 597 F.2d 174, 177 (9th Cir.), *cert. denied,* 444 U.S. 964, 100 S.Ct. 450, 62 L.Ed.2d 376 (1979). In *Rust,* the appellants challenged the lower court's determination that a City exercised its power over "property" of the United States because "property" of the federal government included only property actually owned by the United States and did not include a mortgage interest held by a federal instrumentality. The *Rust* court disagreed, holding that

No basis in law exists for treating mortgage interests of federal instrumentalities differently from other property of the United States.

. . . .

[L]ocal governments cannot take any action to collect unpaid taxes assessed against property which would have the effect of reducing or destroying the value of a federally held purchase-money mortgage lien.

*Id.* at 177, 179. *See also City of New Brunswick v. United States,* 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693 (1928) (local tax entity could be enjoined from selling property for the collection of the taxes assessed upon it "unless all rights, liens and inter-ests in the lots, retained and held by the [government] as security for the unpaid purchase moneys, are expressly excluded from such sales, and they are made, by express terms, subject to all such prior rights, liens and interests").

The appellants cite *Sunbelt Federal Savings Bank v. Montross,* 923 F.2d 353 (5th Cir.1991) in support of their argument. In *Sunbelt,* the FDIC contended that the federal holder in due course doctrine, which bars makers of promissory notes from asserting personal defenses against the FDIC in connection with purchase and assumption transactions involving troubled financial institutions, applied also where recovery was sought upon non-negotiable instruments acquired through purchase and assumption transactions. The court did not agree and refused to extend the doctrine to non-negotiable instruments, reasoning that to do so would change the instruments from contractual obligations which do not enjoy holder in due course protection. The Sunbelt Court held that "when the FDIC assumes control of an institution, the assets are what they are—negotiable instruments, contracts, real property, and so on". *Id.* at 357.

The lien interest which the FDIC acquired from the bank is not changed. It remained the same—a lien interest. The FDIC's lien is "property" under § 1825. State law must yield when there is a conflict with valid federal law. *Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); *Seeley v. Seeley,* 690 S.W.2d 626, 627 (Tex.App.—Austin 1985, no writ).

The appellants' next argument is that the lien, if it is property, is merely possessed by the FDIC and is not property of the FDIC. The FDIC, as receiver, succeeds to all rights, title, powers, and privileges of the failed insured institution. 12 U.S.C.A. § 1821(d)(2)(A)(i) (1989). The lien is owned by the FDIC as receiver for NBC Bank within the meaning of § 1825(b)(2).

Point of error one is overruled.

## II.

■ The taxing authorities' second point of error is that the trial court erred in

holding that § 1825(b)(2) prohibits the appellants from foreclosing the statutory tax liens and selling the property free and clear of all subordinate liens. The taxing authorities argue that even if the mortgage lien has become a lien of the United States, 28 U.S.C.A. § 2410 (1978) governs and mandates that state law, Tex.Tax Code § 32.04, applies, giving the tax lien priority over the claim of any other creditor, including the FDIC.

Section 2410 provides:

(a) Under the conditions prescribed in this section ... the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

....

(2) to foreclose a mortgage or other lien upon, real or personal property on which the United States has or claims a mortgage or other lien.

....

(c) A judgment or decree in such action or suit shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated.

The purpose of this statute was to lift the bar of sovereign immunity which had worked an injustice on private lienors. *United States v. Brosnan,* 363 U.S. 237, 246, 80 S.Ct. 1108, 1114, 4 L.Ed.2d 1192 (1960). Although by its express language the statute *allows* a state court judgment in a foreclosure proceeding to effectively discharge a lien held by the United States, *see Brosnan, supra,* it does not direct the adoption of state law as the federal rule for determining whether the foreclosure of tax liens must extinguish lien interests held by the United States. Under § 2410 state law is effective to divest government junior liens "until Congress otherwise determines".

12 U.S.C. § 1825(b) was enacted over forty years after 28 U.S.C. § 2410 as part of the FIRREA.[3] While 2410 is a general waiver of sovereign immunity in suits to foreclose on property in which the United States has an interest, § 1825(b) specifically applies to property of the FDIC.

Therefore, we hold that § 2410 did not operate to bar the district court from ordering the property be sold subject to the FDIC lien. Point of error two is overruled.

■ The taxing authorities contend in their third point of error that a foreclosure on the real property was not an attempt to levy, attach, garnish, foreclose, or sell the FDIC's lien interest, as prohibited by 12 U.S.C. § 1825(b)(2). However, foreclosure of the tax authorities' lien would extinguish the lien of the FDIC. "[L]ocal governments cannot take any action to collect unpaid taxes assessed against property which would have the effect of reducing or destroying the value of a federally held purchase-money mortgage lien." *Rust v. Johnson,* 597 F.2d at 179. Point of error three is overruled.

### III.

■ The fourth point of error is a constitutional challenge to 12 U.S.C. § 1825(b)(2) that the statute deprives the state taxing authorities of property without due process of law or just compensation in violation of the Fifth Amendment.

The taxing authorities contend that the statute deprives them of their right to foreclose on the property, citing *Armstrong v. United States,* 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960) in support of their argument. In *Armstrong,* a private lienor held a valid materialman's lien. Thereafter, the United States acquired title to the property which was the subject of the lien. The government took the position that sovereign immunity barred foreclosure of the lien. The Court held that although the lien remained valid, the inability to enforce it

---

**3.** FIRREA's legislative history indicates that Congress intended to grant the FDIC the powers of a receiver in equity, and that what is now Section 1825(b) was intended to clarify existing law. H.R.Conf.Rep. No. 209, 101st Cong., 1st Sess. 399 (1989); H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 337 (1989); S.Rep. No. 19, 101st Cong., 1st Sess. 321 (1989), U.S.Code Cong. & Admin.News 1989, 86.

was a destruction of the lienor's property rights.

Section 1825 does not operate as a complete bar to foreclosure by the taxing entities—it prohibits foreclosure without the FDIC's consent. Furthermore, the court ordered a foreclosure sale but provided that the purchaser would acquire the property subject to the lien of the FDIC. The tax lien, therefore, is not rendered valueless. The taxing authorities are not deprived of their property right. Point of error four is overruled.

We believe that Congress did not intend for the state taxing authorities to have the power to reduce or destroy the value of the FDIC mortgage lien, a property interest.

The judgment is affirmed.