986 P.2d 243

**PLM TAX CERTIFICATE PROGRAM 1991–92, LP, a Limited Partnership; and Sterling Real Estate Investment, LLC, a Kansas limited liability company, and Douglas Todd, Treasurer of Maricopa County, Third Party Defendants–Appellees,**

v.

**DENTON INVESTMENTS, INC., an Arizona corporation, Third Party Plaintiff–Appellant.**

**No. 1 CA–CV 98–0666.**

Court of Appeals of Arizona, Division 1, Department A.

July 6, 1999.

---

Leonard, Felker, Altfeld, Greenberg & Battaile, P.C. by Jeffrey H. Greenberg, Russell E. Krone, Tucson, Attorneys for Third Party Plaintiff–Appellant.

Paul S. Harter, P.C. by Paul S. Harter, Alicia Mykyta, Phoenix, Attorneys for Third Party Defendants–Appellees.

## OPINION

NOYES, Judge.

¶ 1 By grant of summary judgment, the trial court allowed Appellees to foreclose tax liens on lots 7 and 8 of property that Appellant acquired from the Resolution Trust Corporation ("RTC"). In resolving the main issue presented, we conclude that the tax lien on lot 7 arose after the RTC acquired the property, that a tax lien is an involuntary lien, that federal law provides that no involuntary lien shall attach to RTC property, and, therefore, that the tax lien on lot 7 was invalid.

### I.

¶ 2 The property in question is a commercial development consisting of five lots, numbered 7, 8, 9, 10, and 12. An office building covers most of lots 8 and 9 and extends 7.7 feet onto lot 7. Lots 10 and 12 were paved for parking. For no known reason, most of the taxes for this development were assessed on lot 7.

¶ 3 The development was encumbered with a deed of trust to secure a loan from the Sun State Savings and Loan Association ("Sun State"). In June 1989, the RTC was appointed receiver for Sun State, and a newly chartered Sun State Savings and Loan Association was organized by the federal government to take over the assets and liabilities of the old Sun State. In November 1990, the RTC was appointed receiver of the new Sun State for the purpose of liquidating its assets and winding up its affairs. In 1992, the deed of trust for the development was transferred from the new Sun State to the RTC.

¶ 4 The taxes on lot 7 went unpaid in 1990, and Appellee PLM purchased the resulting tax lien at Maricopa County's annual taxation sale in February 1992. Later, Appellee Sterling (an affiliate of PLM) purchased the tax liens on lot 8 for the years 1988 through 1994. In October 1995, Appellees filed suit to foreclose the right of redemption on the tax liens, naming as defendants the then-owners of the property, in addition to several unknown individuals and corporations.

¶ 5 Appellant became the owner of this development in February 1997 after purchasing the deed of trust from the RTC and foreclosing on the note. Appellant answered Appellees' complaint and filed a counterclaim for a judgment declaring that Appellees' tax liens were invalid because they arose after Sun State was in RTC receivership.

¶ 6 In resolving the parties' cross-motions for summary judgment, the trial court found as follows:

(1) The tax liens on both Lot 7 and Lot 8 are valid and enforceable tax liens.

(2) The taxes on Lot 7 and Lot 8 have not been paid; Maricopa County caused

these lots to be sold; PLM and Sterling were the purchasers; the Maricopa County Treasurer issued certificates of purchase.

(3) If PLM obtains title to Lot 7, that will give PLM title to the land and title to that portion of the building that is on Lot 7.

¶ 7 In February 1998, Appellant redeemed the taxes on lot 8. In October 1998, the trial court issued a final judgment that foreclosed Appellant's right to redeem the taxes on lot 7, declared that PLM had title to the part of the building that was on lot 7, and granted attorneys' fees to Sterling in the amount of $20,365.75, the full amount of fees incurred by both PLM and Sterling in this action. Appellant timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) (1994).

## II.

■ ¶ 8 In 1989, Congress passed the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") in response to the national crisis caused by widespread failure of savings and loan associations. *See Matagorda County v. Russell Law*, 19 F.3d 215, 218 (5th Cir.1994). The purpose of the legislation was "to strengthen enforcement powers of federal regulators of depository institutions." *Id.* Under FIRREA, the RTC is authorized to act as a receiver for failed savings and loan associations. *See Resolution Trust Corp. v. Cheshire Management Co.*, 18 F.3d 330, 332–33 (6th Cir.1994).

¶ 9 Once the RTC is appointed receiver, it succeeds to all "rights, titles, powers, and privileges of the insured depository institution" by operation of law. 12 U.S.C. § 1821(d)(2)(A)(i) (1994); 12 C.F.R. § 558.1 (1999). FIRREA prevents state and local governments from imposing taxes on property held by the RTC as a receiver, with the exception of ad valorem taxes on real property. *See* 12 U.S.C. § 1825(a) (1994). The statute also provides that "[n]o property of the [Resolution Trust] Corporation shall be subject to levy, attachment, garnishment,

foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation." 12 U.S.C. § 1825(b)(2).

■ ¶ 10 In Arizona, a tax lien attaches on January 1 of the year for which the tax is levied. *See* A.R.S. § 42–312(B) (1991).[1] In regard to lot 7, the tax lien attached, if at all, on January 1, 1990. Because lot 7 went into RTC receivership in June 1989, we hold that the 1990 tax lien did not attach to the property. To hold otherwise would ignore the express direction of Congress in 12 U.S.C. section 1825(b)(2). *See FDIC v. Lee*, 130 F.3d 1139, 1143 (5th Cir.1997).

■ ¶ 11 Appellees rely on *Matagorda County* for the proposition that holding the tax lien invalid would amount to an unconstitutional taking of property. In *Matagorda County*, however, the tax liens attached prior to the FDIC's appointment as receiver. 19 F.3d at 217. In the present case, the tax lien did not attach to lot 7 until *after* the property was in RTC receivership. Because section 1825(b)(2) provides that "nor shall any involuntary lien attach to the property of the Corporation," PLM purchased an invalid tax lien on lot 7.

¶ 12 We find no merit to Appellees' argument that "final receivership" did not occur until November 1990. The RTC created the federal Sun State Savings and Loan Association pursuant to powers granted to it under FIRREA after it was appointed receiver of the old Sun State Savings and Loan Association. *See* 12 U.S.C. § 1821(d)(2)(F). Appellees cite no authority for their suggestion that by naming itself conservator of the new Sun State, the RTC somehow delayed the effects of the receivership and left the assets of the old Sun State vulnerable to the attachment of new tax liens. Such a construction would defeat the purpose of section 1825, which is "to protect assets involuntarily acquired by the [Corporation] from losing value because of its lack of knowledge about local and state tax liens." *Matagorda County*, 19 F.3d at 221. Federal courts have reached

---

1. This section has since been repealed, *see* 1997 Ariz. Sess. Laws 150, section 9, and replaced with A.R.S. section 42–17153 (1999).

the same conclusion on similar facts. *See, e.g., Old Bridge Owners Coop. Corp. v. Township of Old Bridge,* 914 F.Supp. 1059, 1065 (D.N.J.1996) (invalidating tax liens against property on which RTC and FDIC held lien interests as receivers); *RTC Commercial Assets Trust 1995–NP3–1 v. Phoenix Bond & Indem. Co.,* 169 F.3d 448, 458 (7th Cir.1999).

■ ¶ 13   Appellees argue that even if the tax lien did not attach on January 1, 1990, it did so automatically when the RTC transferred its interest in the property to Appellant, which is not protected by FIRREA. We disagree. FIRREA does not *suspend* either the imposition of current taxes or the attachment of tax liens; it provides that the RTC must pay current taxes, and it *permanently* precludes involuntary liens from attaching to RTC property.

¶ 14   Because the tax liens did not attach to the property, a subsequent purchaser of the property is not liable for those liens.

[O]nce the interest is transferred, the subsequent purchaser assumes only the responsibility for later assessments. To hold otherwise would nullify the provision of sub-section (b)(1) that mandates the payment of real property taxes by the [Corporation] and would give that entity an incentive not to pay the required taxes at all.

*Old Bridge Owners Coop. Corp.,* 914 F.Supp. at 1065. *See also Irving Indep. Sch. Dist. v. Packard Properties, Ltd.,* 762 F.Supp. 699, 704 (N.D.Tex.1991), *aff'd,* 970 F.2d 58 (5th Cir.1992) (holding that since taxes imposed after receivership could not attach as lien on the land, the plaintiffs "must look to the FDIC personally to recover").

¶ 15   Appellees cite *Casino Reinvestment Development Authority v. Cohen,* 321 N.J.Super. 297, 728 A.2d 868 (1998), for the proposition that *Old Bridge Owners Cooperative Corp.* is no longer good law. *Casino Reinvestment,* a decision of a state appellate court in New Jersey, held that because real estate taxes attached to the land, a tax lien could arise when the RTC held only a lien interest in the property and no ownership interest in the underlying fee. *Id.* at 870.

The court's decision was grounded in its interpretation of FIRREA as not imposing personal liability on the receiver for real estate taxes, and on the public policy of encouraging the payment of delinquent taxes so as to not deprive local governments of income it would have had but for the receivership. *See id.* at 872–73.

■ ¶ 16   The court in *Casino Reinvestment,* while according "great deference and respect" to the interpretation of these federal statutes by the federal court, nevertheless disagreed with it. *Id.* at 873. Arizona courts, however, accord greater deference to federal court decisions that interpret federal law. *See First Nat'l Bank of Ariz. v. Carruth,* 116 Ariz. 482, 483, 569 P.2d 1380, 1381 (App.1977) ("We believe that we are bound by the decisions of the federal courts in their interpretation of a federal statute.").

¶ 17   Furthermore, we do not agree that Congress intended to exclude the lien interests held by the RTC from the property it intended to protect from involuntary liens. State and local tax liens are superior to all other liens on a property. Allowing them to attach after the RTC becomes receiver would certainly reduce the value of the security interest and make it less marketable, because any potential purchaser would be responsible for the delinquent taxes.

■ ¶ 18   We hold that the 1990 tax lien for lot 7 did not attach to the property, and the subsequent sale of that lien to PLM was invalid. Because we hold that Appellees have no interest in lot 7, we have no need to address the court's alleged error in awarding PLM an ownership interest in the part of the building that was on lot 7.

### III.

¶ 19   Because Appellant redeemed lot 8, Sterling was entitled to an award of attorneys' fees pursuant to A.R.S. section 42–454 (1991),[2] which provides as follows:

At any time prior to entry of judgment foreclosing the right of redemption any person entitled to redeem under this arti-

---

2.   This section has since been repealed, *see* 1997 Ariz. Sess. Laws 150, section 9, effective January 1, 1999, and replaced with A.R.S. section 42–18206 (1999).

cle may redeem as in other cases, notwithstanding that an action has been commenced. However, if redemption is made by any person who has been served personally or by publication in the action, judgment shall be entered in favor of the plaintiff against such person for the costs incurred by the plaintiff, together with a reasonable attorney's fee to be determined by the court. When such action is brought by the state it shall be prosecuted by the county attorney, and the costs and attorney fees awarded shall be deposited in the county general fund.

¶ 20 Sterling claimed that it and PLM incurred a total of $20,365.75 in attorneys' fees in this litigation. The trial court awarded Sterling the full amount of that claim. Appellant argued that Sterling was not entitled to any award of fees because it had neither paid nor agreed to pay any fees. The arrangement between PLM and Sterling was that PLM would pay all fees for both of them. We agree with Appellees that the fee award was not an abuse of discretion merely because PLM rather than Sterling paid the fees. Unlike some fee award statutes, section 42–454 does not limit the amount of fees awarded to the amount actually paid or agreed to be paid. *See* A.R.S. § 12–341.01(B) (1992) ("[S]uch award may not exceed the amount paid or agreed to be paid."). Section 42–454 requires only that the award be "a reasonable attorney's fee to be determined by the court."

¶ 21 We do, however, conclude that it was manifestly unreasonable for the court to award Sterling the full amount of fees incurred by PLM on both lots 7 and 8. Especially now that PLM has lost its claims regarding lot 7, no reasonable basis exists for awarding Sterling any fees that were incurred in connection with lot 7, and no reasonable basis exists for holding that the fees in this case cannot be apportioned between lots 7 and 8. On remand, the parties can argue and the trial court can decide what fees were reasonable to award in regard to the lot 8 redemption.

¶ 22 The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

CONCURRING: REBECCA WHITE BERCH, Presiding Judge, and JON W. THOMPSON, Judge.