37 S.W.3d 80 (2000)
PNL ASSET MANAGEMENT COMPANY, L.L.C., Appellant,
v.
KERRVILLE INDEPENDENT SCHOOL DISTRICT, Appellee.
No. 04-00-00138-CV.
Court of Appeals of Texas, San Antonio.
December 13, 2000.
Rehearing Overruled January 9, 2001.
*81 Joseph M. Harrison, IV, Brusniak, Clement, Harrison & McCool, San Antonio, for appellant.
Kirk Swinney, McCreary, Veselka, Bragg & Allen, Austin, for appellee.
Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.
Opinion by PHIL HARDBERGER, Chief Justice.
PNL Asset Management Company, L.L.C. ("PNL") appeals a summary judgment granted in favor of Kerrville Independent School District ("KISD") in a case involving delinquent property taxes. In its brief, PNL raises six issues, contending: (1) PNL is not liable for the taxes; (2) no lien could attach against the property for nonpayment of the taxes; (3) PNL is not liable for penalties for failure to pay the taxes; (4) PNL did not make a voluntary tax payment; (5) PNL is not liable for taxes assessed with respect to properties PNL did not own; and (6) PNL is not required to pay taxes that KISD is barred from collecting due to limitations. We affirm the trial court's judgment.

Background
In 1987, C.D. Peterson purchased a tract of land in Kerrville known as the Schreiner Property. Peterson executed a Deed of Trust in favor of Charles Schreiner Bank in connection with this purchase. In 1989, Peterson purchased an additional tract of land in Kerrville known as the Brown Property, and he executed another Deed of Trust in favor of Charles Schreiner Bank in connection with this purchase. In April of 1990, the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of the assets of Charles Schreiner Bank. The FDIC sold its lien interest in the Schreiner Property and Brown Property to PNL in August of 1996. In November of 1996, PNL became the owner of both the Schreiner Property and the Brown Property through a foreclosure sale.
At the time of the foreclosure, the taxes KISD had assessed against the Schreiner Property had not been paid since 1987, and the taxes KISD had assessed against the Brown Property had not been paid since *82 1989. In addition, taxes on the personal property located on the Schreiner Property ("Personal Property No. 1") had not been paid since 1987.
In December of 1997, KISD added PNL as a party to a pending tax collection suit. The suit sought to collect taxes due on the Schreiner Property, the Brown Property, and Personal Property No. 1. In addition, the suit sought to collect taxes that had been assessed against an unrelated tract of land in Kerrville known as the Westland Property and certain personal property referred to as Personal Property No. 2.
In February of 1998, Fidelity Abstract & Title Co. ("Fidelity Title") delivered two checks to KISD in payment of the taxes, interest and penalties on the Brown Property. The parties dispute whether a transmittal letter accompanied the check, stating the taxes were being paid under protest. In May of 1998, Fidelity Title delivered a check to KISD in payment of the taxes, interest and penalties on the Schreiner Property and Personal Property No. 1. The parties do not dispute that this payment was accompanied by a transmittal letter stating that the taxes were being paid under protest.
The affidavit of PNL's manager, John Gilbert, states that PNL never owned any interest in the Westland Property or the Personal Property No. 2, and KISD does not dispute this fact.
In June of 1998, PNL filed a counterclaim in KISD's tax suit, seeking a refund of the taxes, interest and penalties paid on the Schreiner Property and Brown Property for tax years 1991 through 1996. PNL also sought a refund of the taxes, interest and penalties paid on Personal Property No. 1 for tax years 1991 and 1992.
The parties filed competing motions for summary judgment, and the trial court granted summary judgment in favor of KISD. PNL timely filed this appeal.

Standard of Review
In reviewing a summary judgment on appeal, we must determine whether the movant met its burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex.1985); Lee M. Bass, Inc. v. Shell Western E & P, Inc., 957 S.W.2d 159, 160 (Tex.App.-San Antonio 1997, no pet.). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in the non-movant's favor. Nixon v. Mr. Property Management Co., 690 S.W.2d at 548-49. When both parties file motions for summary judgment and one such motion is granted, we must review all of the issues presented and, if reversible error is found, render such judgment as the trial court should have rendered, including rendering judgment for the other movant. Jones v. Strauss, 745 S.W.2d 898, 900 (Tex.1988); Lee M. Bass, Inc. v. Shell Western E & P, Inc., 957 S.W.2d at 160.

PNL's Liability for Taxes
PNL's first two issues relate to the trial court's determination that it was liable for taxes assessed against the Brown Property and Schreiner Property for tax years 1991 through 1996, which are the tax years in which the FDIC held a lien interest in the properties. PNL contends that the FDIC is personally liable for those taxes, and federal law prevented a lien from attaching to the properties to enforce payment of those taxes. KISD responds that the lien properly attached.
Whether such a lien was permissible depends on this court's interpretation of 12 U.S.C. § 1825(b)(2).
Section 1825(b)(2) provides:
No property of the corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], nor shall any *83 involuntary lien attach to the property of the [FDIC].
12 U.S.C. § 1825(b)(2). Two competing views exist as to whether this statutory provision prohibits the attachment of a lien to property in which the FDIC holds only a lien interest.
Several courts have concluded that the clear and unambiguous language of section 1825(b)(2) precludes a lien from attaching. See Old Bridge Owners Co-op. Corp. v. Township of Old Bridge, 914 F.Supp. 1059, 1065 (D.N.J.1996); PLM Tax Certificate Program 1991-92, LP v. Denton Investments, Inc., 195 Ariz. 210, 213, 986 P.2d 243, 246 (Ariz.Ct.App.1999). These courts contend that the FDIC remains personally liable for those taxes under section 1825(b)(1); however, section 1825(b)(2) expressly prohibits a lien from attaching to secure that payment. Such attachment is precluded so that the value of the security interest remains unchanged after the FDIC is appointed receiver, maintaining the marketability of the security interest by protecting any potential purchaser from any liability for delinquent taxes assessed during the period of receivership. PLM Tax Certificate Program 1991-92, LP v. Denton Investments, Inc., 195 Ariz. at 213, 986 P.2d at 246.
Other courts take a contrary view based on their belief that section 1825(b)(2) only precludes a lien if the FDIC has fee ownership rather than a mere lien interest. See In re Stafford Pool & Fitness Center, 252 B.R. 627, 631 (Bankr.D.N.J.2000); 37 Huntington St. v. City of Hartford, 26 Conn. L. Rprt. 525, 2000 WL 226372, at *3-4 (Conn.Super.Ct.2000); Casino Reinvestment Development Authority v. Cohen, 321 N.J.Super. 297, 307, 728 A.2d 868 (1998). The lead case for this view, Casino Reinvestment Development Authority, recognized the contrary holding in Old Bridge Owners Coop. Corp., but held that neither section 1825(b)(1) nor New Jersey tax law makes the FDIC personally liable for the payment of the tax. Casino Reinvestment Development Authority v. Cohen, 321 N.J.Super. at 306, 728 A.2d 868. The New Jersey court then asserted that the RTC's property was a mortgage lien, not the underlying real estate; therefore, the lien which attaches to the real property under New Jersey law did not attach to the property of the RTC. See id. at 307, 728 A.2d 868. Both In re Stafford Pool & Fitness Center and 37 Huntington St. v. City of Hartford follow this reasoning. In In re Stafford Pool & Fitness Center, the bankruptcy court further emphasized the inability to collect the property tax from the FDIC under New Jersey law. 252 B.R. at 631. The bankruptcy court noted that New Jersey treats unpaid taxes as a lien on real property and not as a personal liability of the owner. See id. The court then concluded that if the tax liens did not attach to the real property, there would be no way for the tax liability to be enforced. See id.
This court has held that the FDIC's lien is "property" under section 1825. See State v. Bankerd, 838 S.W.2d 639, 641 (Tex.App.-San Antonio 1992, writ denied). In that case, various taxing authorities appealed a trial court judgment ordering that the foreclosure of a parcel of land for the non-payment of taxes was subject to a lien held by the FDIC. See id. at 640. This court stated that the FDIC's lien was "property" owned by the FDIC under section 1825, noting that although Texas law does not recognize a mortgage lien interest as property, state law must yield when there is a conflict with valid federal law. See id. at 641. However, the holding in Bankerd does not affect the reasoning supporting the view that a lien should attach. Even accepting that the FDIC's lien interest is property for purposes of section 1825(b)(2), the courts contending the lien attaches argue that the tax lien "attaches" only to the real property, not to the lien interest, and section 1825(b)(2) only prohibits the "attachment" of the lien to the FDIC's property.
There are policy reasons to support both views. With regard to the view that no *84 lien attaches, section 1825(b)(2) was enacted as part of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") in response to the national crisis caused by widespread failure of savings and loan associations. Matagorda County v. Russell Law, 19 F.3d 215, 218 (5th Cir.1994). The Fifth Circuit appears to have drawn a line with respect to the powers and protections the FDIC was given by FIRREA. FIRREA is intended to provide protections that increase the value of the property, decrease the FDIC's own losses, expedite resale, and save the nation's taxpayers and insured depositors a great deal of money. See Irving Ind. Sch. Dist. v. Packard Properties, 970 F.2d 58, 62-63 (5th Cir.1992). However, FIRREA does not enable the FDIC to "transmute lead into gold." See id. at 61 (quoting Sunbelt Savings, FSB Dallas, Texas v. Montross, 923 F.2d 353, 357 (5th Cir.1991), rev'd on other grounds and remanded, 944 F.2d 227 (5th Cir.1991) (en banc)). For this reason, liens may not attach to property while the FDIC owns it, but a property previously encumbered must remain so. Matagorda County, 19 F.3d at 218-19. If a lien were to attach while the FDIC held a security interest in the property, the value of the security interest would be reduced, making it less marketable and slowing the possibility of resale which appears contrary to the intent of Congress in passing FIRREA. See Irving Ind. Sch. Dist., 970 F.2d at 62-63; PLM Tax Certificate Program 1991-92, LP v. Denton Investments, Inc., 986 P.2d at 246.
On the other hand, local governments and school districts operate in reliance on the recovery of unpaid ad valorem taxes and depriving them of funds would threaten their ability to operate their schools. See Matagorda County, 19 F.3d at 219. PNL contends that the taxing entities would not suffer because the FDIC would be personally liable for the taxes; however, section 1825(b)(1) only makes the real property of the FDIC subject to the tax. See 12 U.S.C. § 1825(b)(1). When the FDIC is the owner of the real property, Texas law would hold the FDIC personally liable for the tax. However, when the FDIC only holds a lien interest in the real property, the FDIC is not personally liable for the tax under Texas law. If the lien does not attach, the taxing entities' only recourse would be against the property owner who held the real property during the time the FDIC held the security interest in the property. This vastly reduces the chance that the taxing entities will recover the tax and appears more akin to an ability to "transmute lead into gold" than to protecting the assets of the failed institution. In addition, a third party who purchases the FDIC's lien interest can foresee the required payment of the taxes that have accrued whereas a school district could not foresee the insolvency of a financial institution holding a lien interest in real property to which the lien would otherwise have attached.
We hold that a tax lien in Texas attaches to the real property, not a lien interest. Since the FDIC only held a lien interest in the Schreiner Property and Brown Property, section 1825(b)(2) did not prevent the KISD's tax liens from attaching to those properties. As a result, PNL was liable for payment of the taxes upon foreclosure.[1]

Penalties
PNL also contends that the trial court erred in requiring it to pay penalties. PNL contends that because the FDIC is not required to pay penalties, PNL should not be required to pay penalties. KISD responds that the penalties were a part of the monies secured by the tax lien, and the tax lien properly attached to secure payment of the base tax plus all penalties.
*85 Section 1825(b)(3) provides that the FDIC is not liable for penalties arising from the failure of any person to pay any real property tax when due. 12 U.S.C. § 1825(b)(3). Therefore, PNL reasons that so long as the FDIC held the property, any lien that properly attached could not secure the payment of penalties and, as successor in interest to the FDIC, PNL contends it is similarly protected.
In Texas, a tax lien secures both the base tax and penalties. See Matagorda County, 19 F.3d at 218. Permitting the lien to secure such penalties has been found to be consistent with the statutory provision precluding the FDIC from being held personally liable for those penalties. In rejecting an argument that a successor in interest to the FDIC could not be liable for those penalties, the Seventh Circuit concluded:
[T]he district court's solution strikes a balance between the state's legitimate interest in penalizing individuals who violate its laws and the risks RTC or its sucessors must bear in holding assets of failed financial institutions. Property comes into RTC's hands with whatever encumbrances it may have. Under § 1825(b)(2), no new involuntary lien may attach to property once it is in RTC's hands, nor may any other lienholder foreclose on or take the property without RTC's consent. When the property is sold, however, the proceeds realized will go to satisfy any creditors, including the state, in accordance with the priorities recognized by state and federal law. RTC is protected to the extent that it and its successors cannot be required to pay a deficiency judgment for taxes or penalties on the property, under § 1825(b)(3), should the amount realized not be enough to satisfy all creditors. This seems to us a sensible reconciliation of all interests concerned.
RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indemnity Co., 169 F.3d 448, 458 (7th Cir.1999). We adopt this reasoning. To the extent the proceeds from PNL's foreclosure can be applied in satisfaction of the penalties, KISD should be paid the penalties because its lien securing payment of the penalties had priority over PNL's security interest. There is no allegation or evidence that the proceeds did not exceed the amount of the tax lien; therefore, the trial court did not err in requiring PNL to pay the penalties.

Westland Property and Personal Property No. 2
In its fifth issue, PNL asserts that it never owned any interest in the Westland Property or Personal Property No. 2; therefore, it is not liable for any tax relating to those properties. KISD agrees that PNL is not liable and asserts no relief has been sought with regard to those properties. The summary judgment did not hold PNL liable for any taxes relating to the Westland Property or Personal Property No. 2. PNL's fifth issue is moot.

1991 and 1992 Taxes for Personal Property No. 1
In its sixth issue, PNL asserts that KISD is barred from collecting the 1991 and 1992 taxes assessed with respect to Personal Property No. 1. PNL contends that KISD did not amend its suit and serve PNL as a defendant until December, 1997. KISD asserts that the limitations period had been tolled when it originally sued Peterson for payment of those taxes. KISD further notes that the amount of taxes at issue under this point of error is $6.11.
Section 33.05 of the Texas Tax Code prohibits the filing of a suit to collect a tax on personal property that has been delinquent more than four years. Tex. Tax. Code Ann. § 33.05(a)(1) (Vernon Supp. 2000). In this case, it is unclear when the lawsuit was filed. Resolving all doubt in favor of KISD, the non-movant with respect to the limitations issue, we must assume suit was filed before limitations barred collection of the 1991 and 1992 *86 taxes. Under those circumstances, it would appear that PNL would only be able to escape liability for the taxes by proving it was a buyer in the ordinary course of business. See Tex. Tax.Code Ann. § 32.03 (Vernon Supp.2000). Since PNL acquired the Personal Property No. 1 though a foreclosure of a security interest, it could not prove this. See Central Appraisal Dist. of Taylor County v. Dixie-Rose Jewels, Inc., 894 S.W.2d 841, 842-43 (Tex.App.-Eastland 1995, no writ). PNL's sixth issue is overruled.

Conclusion
Because the tax liens properly attached to the Schreiner Property and the Brown Property during the period of time in which the FDIC held only a lien interest, PNL was responsible for payment of the taxes upon its foreclosure. PNL is also responsible for payment of the penalties the lien secured to the extent the proceeds from the foreclosure were greater than the amount of the tax liens. Since there is no allegation or evidence that the proceeds did not exceed the amount of the tax liens, the trial court properly held PNL liable for the penalties. Limitations did not bar the collection of the 1991 and 1992 taxes assessed against Personal Property No. 1. The trial court's judgment is affirmed.
NOTES
[1] Our resolution of this issue renders KISD's takings argument and the voluntary payment issue moot.