**In re TRI–CITY HEALTH CENTRE, INC., Debtor.**

**Case No. 98–35770–SAF–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Aug. 14, 2002.

Weldon Moore, Creel, Susman & Moore, Dallas, TX, for Movant, Bennet Medical Management Services, Inc.

Chris Wolffarth, Johnson & Wolffarth, Dallas, TX, for Robert Milbank, Jr., Chapter 7 Trustee.

### *MEMORANDUM OPINION AND ORDER*

STEVEN A. FELSENTHAL, Chief Judge.

Bennett Medical Management Services, Inc., moves the court for an administrative expense for the payment of real property taxes on property that had been property of the bankruptcy estate. Robert Milbank, Jr., the Chapter 7 trustee of the bankruptcy estate of Tri–City Health Centre, Inc., the debtor, opposes the motion. With the taxes outstanding, Bennett foreclosed on the property on September 3, 2001. The trustee contends that Bennett took the property subject to the taxes and that his subsequent payment of the taxes provided no benefit to the estate. The court conducted a hearing on the motion on July 2, 2002.

The determination of the expenses of administering a bankruptcy estate constitutes a core matter over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(A) and 1334. This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rules 7052 and 9014.

Bennett held a security interest in the Grove Clinic, which had been owned by Tri–City. Tri–City filed a petition for relief under Chapter 11 of the Bankruptcy Code on July 3, 1998. Bennett sought relief from the automatic stay but withdrew the motion as part of an agreed treatment of its claim under Tri–City's plan of reorganization. The court confirmed the plan on June 4, 1999. But, Tri–City defaulted under the plan. On October 2, 2000, the court, at the debtor's request and with the creditors' consent,

converted the case to a case under Chapter 7 of the Bankruptcy Code.

The trustee attempted to retain Tri–City's property, including the Grove Clinic, for a sale to a consortium that would re-open and operate the hospital. Ultimately, however, on September 4, 2001, Bennett bought the Grove Clinic at a foreclosure sale.

While under Chapter 11, Tri–City did not pay the post-petition taxes on the property. Additionally, while under Chapter 7, the trustee did not pay the post-petition taxes on the property.

After becoming the owner of the Grove Clinic, on March 20, 2002, Bennett sold the clinic to a third person. At the closing, Bennett paid real property taxes for the years 1998–2001 to the Dallas County Tax Collector and to the City of Dallas and the Dallas Independent School District. The parties stipulated that $111,145.90 of the taxes paid are subject to this motion. Bennett sold the property for approximately $450,000, which was sufficient to cover the taxes and the amount that had been owed by the Tri–City bankruptcy estate to Bennett before the foreclosure.

The trustee lacks unencumbered assets except for a judgment against Dr. Randolph Gillum. Randolph Gillum, coincidentally, is the father of Dr. Reef Gillum, the owner of Bennett. The taxing authorities neither requested payment of the taxes by the trustee nor filed a motion for an administrative expense.

The parties agree that the real property taxes for 1998 do not constitute administrative expenses, even if requested by the taxing authorities. *In re T & T Roofing and Sheet Metal, Inc.,* 156 B.R. 780 (Bankr.N.D.Tex.1993). Thus, the instant motion concerns the 1999, 2000, and 2001 taxes. The parties stipulate that as of October 2, 2000, the date of the conversion of the case to Chapter 7, the taxes, penalty and interest totaled $96,391.68. The parties further stipulate that between the date of conversion and the date of foreclosure, September 4, 2001, an additional $12,621.53 in taxes, penalty and interest accrued. At the hearing, Bennett recognized that Chapter 11 administrative expenses would be subordinated to Chapter 7 administrative expenses.

■ "An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a). "After notice and a hearing, there shall be allowed administrative expenses ... including any tax incurred by the estate [with exceptions not here applicable]." 11 U.S.C. § 503(b)(1)(B)(i).

Tri–City, as debtor-in-possession, used the Grove Clinic, opposed Bennett's motion to lift the stay, and included the clinic in its plan of reorganization. Tri–City did not abandon the property and the automatic stay enjoined Bennett from foreclosing its lien on the property. The bankruptcy estate thereby incurred the real property tax liability for 1999 and 2000. However, Tri–City did not pay the taxes on the property. After conversion to Chapter 7, the trustee kept the property in the bankruptcy estate in an attempt to maintain the estate for potential purchasers. The bankruptcy estate thereby incurred the tax liability for 2001. However, the trustee did not pay the taxes. Facially, therefore, the taxes appear to be administrative expenses under § 503(b)(1)(B)(i).

■ The trustee argues that the property ultimately did not benefit the estate and, therefore, the estate should not be liable for payment of the taxes as administrative expenses. Under 11 U.S.C. § 503(b)(1)(A), administrative expenses include "the actual, necessary costs and ex-

penses of preserving the estate." The Fifth Circuit has explained that requires a benefit to the estate. See *NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir.1991)(asserting that "[c]ourts have construed the words 'actual' and 'necessary' narrowly: the debt must benefit [t]he estate and its creditors.") Section 503(b)(1)(B)(i), on the other hand, does not require that the taxes be incurred to preserve the estate, but merely that the taxes be incurred by the estate. The tax provision therefore does not impose a benefit to the estate component. *In re Farris*, 205 B.R. 461, 464 (Bankr.E.D.Pa.1997). But, nevertheless, the property did benefit the estate. Tri–City used the Grove Clinic during the Chapter 11 phase of the case and included the property in its plan of reorganization. The trustee held the property to attempt to realize value for creditors by a sale of the estate's assets. Consequently, the property had been administered by the estate with a benefit to the estate. *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 386–87 (5th Cir.2001).

■ Courts have questioned, however, whether an entity other than a taxing authority may request the payment of the taxes as administrative expenses. *See, e.g., In re Carolina Triangle Ltd. P'ship*, 166 B.R. 411, 416 n. 4 (9th Cir. BAP 1994). Section 503(a) authorizes "any entity" to request payment of an administrative expense. Thus, Bennett should be able to request payment of the taxes. *In re Mailman Steam Carpet Cleaning, Inc.*, 270 B.R. 82, 87 n. 11 (1st Cir. BAP 2001).

But, Bennett's request must be "timely." 11 U.S.C. § 503(a). Bennett did not pay the taxes in 1999, 2000 or 2001. In fact, Bennett never paid the taxes in its status as a secured creditor. The taxing authorities never requested payment of the taxes by the bankruptcy estate. Bennett never requested that Tri–City or the trustee pay the taxes while the property had been administered by Tri–City or the trustee as property of the estate. Bennett subsequently removed the property from the estate by a foreclosure sale. Bennett did not pay the taxes until it owned the property. As explained below, when Bennett paid the taxes as owner, Bennett fulfilled its non-bankruptcy law obligations, which had nothing to do with the administration of the bankruptcy estate and which had been incurred when the bankruptcy estate no longer had any interest in the property. Timeliness turns on the facts of the case. Here, Bennett's request is tardy.

Section 503(a) provides that an entity "may tardily file [a request for payment of an administrative expense] if permitted by the court for cause." 11 U.S.C. § 503(a). Bennett has not requested permission to file a tardy motion. But, even if the court construed the pending motion to include that request, Bennett has not established cause.

Bennett did not pay the taxes on behalf of the bankruptcy estate. Under both Texas law and the Bankruptcy Code, Bennett cannot now obtain reimbursement of its payment of the taxes as if paid as an administrative expense.

■ Under Texas law, the tax lien attaches to the real property. *PNL Asset Mgmt. Co., L.L.C. v. Kerrville Indep. Sch. Dist.*, 37 S.W.3d 80, 84 (Tex.App.-San Antonio 2000, pet. denied). A purchaser of the property takes the property subject to those taxes and the tax lien. 69 Tex. Jur.3d §§ 513, 519, and 556. When Bennett became the owner of the property through the foreclosure sale, Bennett became liable for the payment of the real property taxes. *PNL Asset Mgmt.*, 37 S.W.3d at 84. When Bennett removed the property from the bankruptcy estate by purchasing the property at foreclosure, the taxing authorities would look to the prop-

erty and, hence, to Bennett for payment of the tax lien. *See In re Soraiz,* 1989 Bankr.LEXIS 1952, 6 (Bankr.S.D.Tex.1989)(noting abandonment of property by trustee to lender for sale at a subsequent foreclosure sale after the stay had been lifted as to the property).

Bennett purchased the property at the foreclosure. Therefore, as the owner, Bennett became liable to pay the tax lien. Bennett paid the tax lien when it subsequently sold the property to a third person. Bennett paid the taxes to remove the lien for which it, as owner of the property, had liability. Bennett cannot now transfer its liability to the bankruptcy estate.

Arguably, under Texas law, a taxing authority may authorize an entity to collect a tax on its behalf. 69 Tex. Jur.3d §§ 299–301. That did not happen here.

Bennett could have paid the taxes prior to foreclosure, while the property remained property of the estate. Bennett would have then been acting in its capacity as a secured creditor. A secured creditor may pay real property taxes to preserve and protect its collateral. The court does not have Bennett's loan documents before it. However, the court notes that Texas loan documents typically allow the secured creditor to add the taxes to the secured debt, when the secured creditor pays the taxes. But, under that scenario, Bennett would have had that right as part of its pre-petition rights. As such, it would have been part of Bennett's pre-petition claim. 11 U.S.C. §§ 101(5) and 502. The claim would have been treated under 11 U.S.C. § 506. But, Bennett could not have converted a pre-petition claim into a post-petition administrative expense. *In re T & T Roofing,* 156 B.R. at 782.

Alternatively, Bennett might have, upon paying the taxes while the property remained property of the estate, sought adequate protection for its secured position under 11 U.S.C. § 361. While the court cannot speculate as to how it would have addressed the request, the court notes that the likely result, based on the actual market established by the actual sale, would have protected Bennett. But, in doing so, Bennett would have been placed in precisely the same position that it currently finds itself.

The parties recognize that a fair market sale of the property, in March 2002, between a willing seller and a willing buyer would have resulted in a $450,000 price. That amount allowed Bennett to pay the outstanding taxes with a net that was sufficient to cover the amount owed by the bankruptcy estate prior to foreclosure. Had Bennett paid the taxes without foreclosing and then received an adequate protection order from the court, the trustee presumably would have retained the property in the estate and realized the same fair market price in 2002. And, that price would have covered the taxes and the debt to Bennett.

Thus, under Texas law, Bennett had liability to pay the taxes as owner of the property after foreclosure and, cannot, as a result, seek redress from the bankruptcy estate. Alternatively, had Bennett paid the taxes without foreclosing, Bennett may have sought protection through either the claims process or the adequate protection process or, possibly, both. Bennett did not act in that fashion. For these reasons, Bennett has not established cause to now ask the bankruptcy estate to pay Bennett for his payment of the taxes.

For the above reasons,

**IT IS ORDERED** that the motion is **DENIED.**